## HARDEN v. CITY OF JACKSON.

MUNICIPAL CORPORATIONS—PERSONAL INJURIES—DEFECTIVE SIDE-
  WALKS.

> A city is not liable for injuries to a person, received by a fall
> caused by his cane going through a crack between two planks
> with decayed edges, where the walk was in a reasonably safe
> condition for persons not using canes.

Error to Jackson; Peck, J.   Submitted June 9, 1904.
(Docket No. 4.)   Decided July 16, 1904.

Case by Thomas Harden against the city of Jackson for
personal injuries.   There was judgment for plaintiff, and
defendant brings error.   Reversed.

*Albert O. Reece* (*John W. Miner*, of counsel), for ap-
pellant.

*Richard Price*, for appellee.

HOOKER, J.   The plaintiff was injured by a fall upon a
sidewalk upon the main street in the city of Jackson, in front
of a hardware store.   This walk was made of plank nearly
two inches thick, and had been down some years.   It had
been broken in spots, and there was evidence that there
had been some decay, and that the walk had been repaired
in several places, both by putting in new in place of broken
planks, and by nailing sheet iron or boards over broken or
decayed places.   The evidence is suggestive of diligence
in the matter of repairs, and it was also shown that the
walk was inspected a few days before the accident, which
occurred in the following way:   The plaintiff walked with
a crutch and cane.   At a point where the walk was laid
over an area, the cane suddenly went through the walk,
letting the plaintiff fall.   He testifies as follows about the
transaction:

" I was standing in front of Crone & McGraw's hardware store—the east window—and the car came down and stopped in front of the Hibbard House, and I started, going to take it; and as I started I put my cane forward, and, when I bore on my cane on the boards, I went right through, and the cane went down. I was walking with a cane and a crutch—the cane in my right hand, and the crutch under my left arm. I always put the cane ahead of my foot, then made my step. * * * When the cane went through the walk I was shocked, I went through so quickly. I didn't know anything at all, and, the first thing I knew, Mr. Weatherwax came out and lifted me up. I was almost picked up as soon as I was down. One man handed me my crutch, and another man my cane, and as he picked up my cane I saw a hole or dozy spot in the walk; and that is the last I saw of Main street for ten months. The cane was through a hole, and hanging on the walk, and the hole was the size of the end of the cane. The wood around it was kind of dozy, I should say. That is the only thing I could tell. * * * I did not know before I placed my cane on this weak spot that it would let me through. This walk was on the north side of Main street, and the place where I fell was opposite the junction of Main and Francis streets. The walk there was very bad. I should say it was dangerous, because there were holes there. It was patched with tin or iron and with extra pieces of wood. I could not remember how long this piece of walk was down. My place of business was right upstairs opposite this piece of walk. It had been patched since it was put down. There was a new walk put down there originally by Mr. Bader. It was an old walk—probably been down ten or twelve or fourteen years. It had been patched because there were holes there and dangerous places. The planks had broken out between each other. There were several rotten places. I should think the holes were occasioned by rot. There were strips of tin put in some places, probably two or three or four inches wide. I have seen pieces of iron put there, three or four inches wide, to cover over cracks. It had been in this general condition, with holes, rotten places, and patches, for several years. * * * There was no hole where I put my cane before I put my cane there. When the man handed me the cane, he pulled the cane right out, and there was a hole just the size of the cane—right there in the dozy spot."

On cross-examination he said:

"I could not look to see where I put my cane all the time.

"*Q.* Now, if you hadn't been going to the car, Mr. Harden, do you think there was anything about the character of that spot that would have attracted your attention as you passed by?

"*A.* No, sir; I don't know that there was anything that would have attracted my attention.

"*Q.* You looked at this spot after you pulled your cane out?

"*A.* I could not help but see it. I didn't pull my cane out. Another man pulled it out and handed it to me. I saw the spot after the cane was pulled out. There was a round hole in it, the size of the largest part of the cane. I fell with my whole weight on the cane. The hole was between two boards. All I could see of it there was the round hole. The last I ever saw of that spot was when I left there that night.

"*Q.* You claim that there was nothing else about that place that would have attracted your attention, even if you had not been hurrying for the car?

"*A.* I don't think it would.

"*The Court:* Were there two planks and boards came close together?

"*A.* They came close together, but there was a dozy spot, I should think about that long (indicating about eighteen inches), between the two boards—part on one and part on the other.

"*Q.* Now, in walking with your crutch and cane, when you came over on your cane you threw your full weight on it, did you not?

"*A.* Yes, sir. I am sure I looked at the exact spot, because I saw them pull the cane out. I don't know who it was that pulled the cane out."

This is a fair sample of other testimony which may be said fairly to indicate that this was an old walk, which was being made to do service by such repairs as were from time to time necessary.

It is contended that, even if the edges of the two planks between which the plaintiff's cane passed were beginning to rot, it was not observable from above, and the defect was therefore a latent one; and, in support of this conten-

tion, counsel cite the fact that no witness testified to noticing any decay before the accident.  It appears that the planks were in a condition at that place reasonably safe for persons' feet, and that the accident became possible only by reason of the fact that plaintiff depended upon a cane for support, which is said to be not such ordinary use as the walk is provided for.  Upon plaintiff's part, counsel urge that, while comparatively few lean on canes or are supported by crutches, the aged and infirm have done so from time immemorial, and that it is one phase of ordinary travel, for which walks are provided, and a walk that has cracks wide enough for a cane to go through, or spots weak enough to give way under a cane, is, within the statute, a walk not in good condition and reasonably fit and safe for travel.

Sidewalks of plank are in common use.  We may take judicial notice of the material and mode of construction ordinarily adopted, as well as the methods and period of use.  We know that they are often made of cheap lumber, and that they begin to deteriorate early.  If laid tight when put down, the boards soon shrink and cracks open.  The edges of the boards, being of the sappy portion of the timber, get dozy and begin to decay a long time before the heart is affected.  Knots shrink and drop out, leaving knot holes.  It is not to be expected that a sidewalk will be taken up and relaid as soon as the cracks open, and the edges of the board show signs of decay, or knot holes appear.  To do this would make board walks the most extravagant kind of walks.  Where they are built of heavy plank, what has been said applies with greater force.  The undisputed proof in this case shows that this walk was kept in repair by mending.  That is a proper custom, for in no other way can the reasonable life of a walk be secured.  There is no proof of a serious decay in the walk at the place where the cane went through.  If it was visible at all, it was, at most, a dozy place, clearly shown not to be dangerous to the ordinary pedestrian.  There is no doubt that the legislature authorized sidewalks for

the use of the lame and aged, as well as for the able-
bodied and young, but we know that the former
classes should, and usually do, use greater care than
the latter find necessary.  A man walking on crutches
knows the common method of building sidewalks.  He
knows that the edges of boards decay and knots drop out,
and instinctively he learns to avoid putting his crutches in
holes or cracks.  We think it is not negligence for a city
to use its plank walks, although they have cracks and
knot holes through which a cane or crutch would go, act-
ing upon the expectation that the traveler must know that
they are practically unavoidable, and are common to all
sidewalks, long before they are sufficiently worn to justify
pulling them up and building anew.  The city has a right,
in the maintenance of its walks, to expect a reasonable de-
gree of care from all persons; and, when its walks are safe
for the ordinarily prudent use, there is no negligence.  If
there were no walks the pedestrian might still fall, and
the crutches of the infirm go down in holes made by ani-
mals, or in soft places.  An accident from such a cause
would be a casualty.  So, too, there may be casualties
upon walks.  The cities are not insurers of those who walk
on sidewalks, and, even though injured without negligence
on their part, the same is no more than a casualty, if the
walk is as good as such person has a right to expect.
Such is this accident.  As in cases of snow and ice, there
is a limit to the duty of the municipality.  *Bigelow* v.
*City of Kalamazoo*, 97 Mich. 121 (56 N. W. 339); *Weisse*
v. *City of Detroit*, 105 Mich. 482 (63 N. W. 423); *Leslie*
v. *City of Grand Rapids*, 120 Mich. 28 (78 N. W. 885);
*Jackson* v. *City of Lansing*, 121 Mich. 279 (80 N. W.
8); *Lee* v. *City of Port Huron*, 128 Mich. 536 (87 N. W.
637, 55 L. R. A. 308).  We are of the opinion that a walk
should not be said to be unfit and not reasonably safe for
travel when a cane will go through the cracks, even if dozy
edges of the planks are what make it possible.

The judgment is reversed, and no new trial ordered.

The other Justices concurred.