# OCTOBER TERM, 1893.

97   121
105. 486
97   121
137  275
137  668

MELVILLE J. BIGELOW, ADMINISTRATOR OF THE ESTATE
OF JULIA E. STUART, DECEASED, v. THE CITY
OF KALAMAZOO.

*Municipal corporations—Defective cross-walks—Liability for
injury.*

1. Cities are not required to keep streets in a condition absolutely
safe for travel.
2. The construction of a cross-walk in accordance with the require-
ments of the locality, adopting the usual means, and those
best adapted for the convenience of the public, cannot be said
to be a negligent construction.
3. A cross-walk must be reasonably safe in view of the purpose
for which it is constructed, the necessary uses of the street,
and all the varying conditions.

Error to Kalamazoo.   (Buck, J.)   Argued April 19, 1893.
Decided October 13, 1893.

Negligence case.   Plaintiff brings error.   Affirmed.   The
facts are stated in the opinion.

*Osborn & Mills,* for appellant, contended:

1. A municipality cannot build a dangerous and unsafe cross-walk,
or permit a safely planned and constructed walk to get out
of repair, and shield itself, as against liability, behind its leg-
islative power to adopt a plan and method of building; citing
*Carver v. Plank-Road Co.,* 61 Mich. 585; *Malloy v. Township
of Walker,* 77 Id. 448; *Sebert v. City of Alpena,* 78 Id. 165.

*E. M. Irish,* for defendant, contended:

1. The city had to provide in some way for the rails of the street-car track to go through the walk, and it is difficult to imagine a safer one than that adopted, and the case is ruled by *Shippy v. Village of Au Sable*, 65 Mich. 494.

2. The fact that the work was done under the direction of the street commissioner, and the bills audited and paid by the city, is sufficient evidence that the city had adopted the plan that was used; citing *Davis v. City of Jackson*, 61 Mich. 539.

McGRATH, J. Plaintiff seeks to recover for an injury received by reason of an alleged defective cross-walk.

Portage street was unpaved, and in wet weather very muddy. A street-car track occupied the center of the street. The walk was constructed of two planks, four inches thick, and from twelve to sixteen inches in width. Between the planking a space of sixteen inches, and a space outside of the plank, had been paved with cobble-stones. The rail in use by the street railway was the ordinary flat rail. The planking had been raised above the street grade, so that at the car tracks the surface of the plank was two inches higher than the rail. Short planks had been laid between the rails. The ends of the planking were from two to four inches from the rail. In this condition it was found that the planking, being above the rail, interfered with the scrapers attached to the street cars, and the city authorities caused the ends of the planks to be chamfered off, commencing back several inches from the ends. Plaintiff's decedent stepped upon the beveled edge of one of these planks, her foot slipped, and she fell forward. The court submitted the case to the jury, and a verdict for the defendant resulted.

Upon the case made, defendant was entitled to a verdict, and it is unnecessary to consider the questions raised by plaintiff. The alleged defect in the cross-walk was part of a plan adopted, which was rendered necessary by existing conditions. Cross-walks are constructed for the convenience of pedestrians. This walk was elevated of necessity;

otherwise, it would have been of little value. The railway tracks were necessarily lower than the walk. It became necessary either to cut off the planks to allow for the use of the scrapers, or to chamfer them down so as to allow the scraper to pass over them. By adopting the other plan, another and greater danger would have been presented. In all of our cities these conditions present themselves. Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from two to six inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon' which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor cross-walks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. Cross-walks upon our unpaved streets are usually constructed in this identical manner. Street-car tracks are necessarily constructed at the street grade. Of necessity we must have gutters at these railway tracks. These gutters have abrupt edges, and must be wide enough to admit of wheels, the play of wheels, and the passage of the scraper, or the walk at the intersection of the tracks must be chamfered off, as in the present case. To have shortened the planking, leaving holes large enough to admit a foot, would increase the danger rather than diminish it. The construction of a cross-walk in accordance with the requirements of the locality, adopting the means

usually adopted, and which are best adapted for the convenience of the public, cannot be said to be negligent construction. Cities are not required to keep streets in a condition absolutely safe for travel. A cross-walk must be reasonably safe; reasonably safe in view of the purpose for which it is constructed, the necessary uses of the street, and all the varying conditions.

The judgment is affirmed.

HOOKER, C. J., LONG and GRANT, JJ., concurred with McGRATH, J.

MONTGOMERY, J. *(dissenting)*. This action was instituted in the circuit court of Kalamazoo county for personal injury received by the plaintiff while passing over an alleged defective cross-walk. A trial was had, and verdict rendered in favor of the defendant, during the life-time of Mrs. Stuart. After suing out a writ of error in this Court the action was revived in the name of the administrator. It was suggested upon the argument that the cause of action had abated by the death of Mrs. Stuart; but this suggestion is answered by a reference to the statute (section 7393, How. Stat.), which provides that—

"In all personal actions, the cause of which does by law survive, if there is only one plaintiff, or one defendant, and the sole plaintiff or defendant shall die after the commencement of the action, and before the final judgment, the action may proceed and be prosecuted by or against the surviving party, and by or against the executor or administrator of the deceased party, in the manner provided in this chapter."

The succeeding section provides for the suggestion of the death upon the record, and that the executor or administrator may thereupon take upon himself the prosecution or defense of the suit, as the case may be. At the time of the death of Mrs. Stuart this cause of action was being prosecuted in this Court, and, if the cause of action sur-

(

vived. then, under the provision of section 7394, the administrator had the right to prosecute the writ of error. By the amendment to section 7397, adopted in 1885, that section now provides as follows:

"In addition to the actions which survive by the common law, the following shall also survive, that is to say: Actions of replevin and trover, actions of assault and battery, false imprisonment, for goods taken and carried away, for negligent injuries to the person, and actions for damages done to real or personal estate."

See, also, *Hurst v. Detroit City Railway*, 84 Mich. 543.

The case was submitted to the jury under instructions, and numerous errors are assigned. It is contended, however, by the defense, that the proofs on the part of the plaintiff made no case for the jury which tended to show any negligence on the part of the city. And this we understand to be contended for on two grounds: First, that the nature of the defect itself was such that, as matter of law, the court should say the walk was in a reasonably safe condition for public travel; and, second, that, as the walk was constructed in pursuance of a plan adopted by the city authorities, this was a legislative duty, and therefore that no liability could arise out of that neglect.

Plaintiff introduced testimony tending to show that the defect in question consisted of a hole or opening between the end of the walk and the outer rail of the street railway. The walk in question consisted of two planks, about one foot in width and six inches in thickness. The evidence tended to show that, from a point fourteen to sixteen inches from the end of the plank, the same was beveled off sharply to the end nearest the rail; that the plank was laid above the level of the rail; that the nearest point in the plank to the rail was from two to four inches, leaving a hole; and that the plaintiff's intestate, in passing over the place, stepped upon this beveled portion of the plank,

her foot slipped backward into the hole, and from this the injury resulted.

The learned circuit judge was of the opinion that it was a question for the jury as to whether this condition of the walk was a reasonably safe and fit one, and I think that in this view of the law he was correct.     See *Retan v. Railway Co.,* 94 Mich. 146; *Hill v. City of Fond du Lac,* 56 Wis. 242 (14 N. W. Rep. 25); *Glantz v. City of South Bend,* 106 Ind. 309 (6 N. E. Rep. 632); *Goodfellow v. City of New York,* 100 N. Y. 15 (2 N. E. Rep. 462); *Dowd v. Chicopee,* 116 Mass. 93; Elliott, Roads & S. p. 447.

The contention that the city may excuse itself from the performance of a positive duty imposed by the statute, on the ground that the plan of construction of a street or walk is within the legislative discretion of the authorities, is answered by the repeated decisions of this Court.     The statute imposing the duty is not uncertain or ambiguous. Section 1446*e,* 3 How. Stat., provides:

"It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair, so that they will be reasonably safe and convenient for public travel, all public highways, streets, bridges, sidewalks, cross-walks, and culverts that are within their jurisdiction and under their care and control, and which are open to the public travel."

Section 1446*c* provides that—

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets; and all bridges, sidewalks, cross-walks, and culverts on the same, in reasonable repair, and in condition reasonably safe and fit for travel, by the township, village, city, or corporation whose corporate authority extends over such public highway,   *   *   *   and whose duty it is to keep the same in reasonable repair, such township, village, city, or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages," etc.

In *Malloy v. Township of Walker*, 77 Mich. at page 462, it is said:

"This statute cannot be given a construction that would relieve a township or other municipality, upon which a burden is cast to keep its highways in repair and reasonably safe for travel, from liability by saying that it had adopted a method of construction, and had built according to the plan. A municipality cannot construct a dangerous and unsafe road,—one not safe and convenient for public travel,—and shield itself behind its legislative power to adopt a plan and method of building, and constructing in accordance therewith."

See, also, *Sebert v. City of Alpena*, 78 Mich. 165, and *Barron v. City of Detroit*, 94 Id. 601.

I think there was a case for the jury, but, as my brethren are of the contrary opinion, it is unnecessary to discuss the various assignments of error.