# Richmond

CITY OF ROANOKE, ETC. V. JENNIE E. SUTHERLAND.

January 12, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*Robert C. Jackson,* for the plaintiff in error.

*T. W. Messick,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Jennie E. Sutherland, a woman fifty-nine years old, brought suit against the city of Roanoke to recover damages for alleged injuries sustained by her because of a defect in the sidewalk on Campbell avenue in said city, which constituted, as she claims, negligent conduct on the part of the city.

It is the duty of the city of Roanoke to keep its streets in a reasonably safe condition.

The case was tried before a jury, which rendered a verdict in favor of the plaintiff for the sum of $8,000.00. This court granted a writ of error. The plaintiff assigns error as follows:

(1) The refusal of the court, on motion of the defendant after all the evidence was in, to strike out the plaintiff's evidence.

(2) The refusal of the court to give peremptory instruction "A," based on the evidence, and requested by the defendant; and

(3) The refusal of the court, on the defendant's motion, to set aside the verdict of the jury and render judgment in favor of the defendant notwithstanding said verdict.

There is no substantial conflict in the evidence. There is no suggestion by the defendant of contributory negligence on the part of the plaintiff. The assignments of error present the single question of the legal insufficiency of the

evidence to show actionable negligence, or the absence of ordinary care on the part of the city in failing to repair the defect complained of in the sidewalk prior to the accident. The accident occurred on the 20th of November, 1930, about 9 o'clock in the night. At the place of the accident the sidewalk was constructed of two rows of concrete blocks each five feet by five feet. The entire width of the sidewalk was ten feet. In the middle where the two rows of concrete blocks came together the block on the inner side of the sidewalk away from the curb had sunk below the block of concrete next to the curb, that next to the curb remaining in position as it was constructed. The depression ran parallel with the curb and extended a distance of about twelve feet in the center of the sidewalk. The highest point of elevation was about one and one-eighth inches and extended twelve feet therefrom to no elevation, or even with the extended portion of the sidewalk. The entire distance presented a depression or elevation averaging three-fourths of an inch. The one and one-eighth inch elevation or depression extended a distance of seven inches which gradually decreased to evenness.

There was an arc light diagonally across the street of 250 candle power which was distant from the place of the accident fifty-three feet, which was sufficient to light or illumine the street 150 feet away. On the side of the street where the accident happened there was a business building, and the place of the accident could be said to have been in a business section of the city. Campbell avenue is one of the main avenues in the city and at the point in question was daily used by many pedestrians. Mrs. Sutherland was unacquainted with the sidewalk and street. She had not been there before for many years. On the night of the accident, in company with her daughter, she had occasion to visit the home of a lady which was very near the place of the depression or elevation. They parked their car on the street some distance from the point of the accident because of the difficulty in finding a place to park nearer. In return-

ing from the place visited about 9 o'clock she and her daughter were proceeding along the walk, she being on the inside and her daughter on the outside, toward the parked car. Upon reaching the point of the depression a part of her foot struck the elevation and the other part went down, causing her to fall and seriously injure herself. The amount of the recovery is not questioned. On both sides of the street there were parked cars. One directly opposite the depression which obscured the light from the arc lamp and caused darkness.

This statement constitutes substantially the facts obtaining in the case except that the condition of the sidewalk at the time of the injury was the same as it had been for some three years and the city was charged with at least constructive notice of such condition. It may be well to say that Mrs. Sutherland was taken to a hospital where she remained for some two months, and she was thereafter treated by physicians and still suffered at the time of the trial of the case and was unable to perform the work and services which she had theretofore done.

Counsel for the city insistently urges that under the facts stated no negligence upon its part was shown and that as a matter of law it was guilty of no negligence and there was no liability upon it.

Counsel for the plaintiff takes the position that the issues were peculiarly for the determination of the jury, and that the jury having found a verdict for the plaintiff which was sustained by the trial court, the matter was legally concluded and this court should not disturb it.

In 13 R. C. L. 351, section 289, it is said: "A municipal or quasi municipal corporation is not responsible for every accident that may occur on its streets or highways, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions or defects therein. Nor does it warrant that its streets shall be free from obstructions or defects or that they will be absolutely perfect and safe at all times."

■ A reasonable degree of care is required of cities in constructing their sidewalks and in keeping them in repair. This is so well established that it is needless to cite authorities with reference thereto.

"What is reasonable care depends upon the danger." Amer. & Eng. Ency. of Law, Vol. 21, 466.

"Where any particular act or omission is obviously and indisputably dangerous or the reverse, the court may say that it is evidence of or shows negligence, or express the opposite view." Amer. & Eng. Ency. of Law, Vol. 21, 504.

■ "Or, as the rule has been otherwise expressed, though the facts are not disputed, negligence is still a question for the jury if different conclusions might be drawn by the minds of reasonable men from the facts as established. * * * But this rule does not, as has been seen, apply where the act or omission in ₁question is clearly and obviously fraught with danger, or of a nature indisputably harmless and unlikely to produce injury." Amer. & Eng. Ency. of Law, Vol. 21, 506.

This general statement of the duty of the municipal corporation and rules of liability suggests the *quaere:* Was the precise defect in the sidewalk clearly and obviously fraught with danger or of a nature indisputably harmless and unlikely to produce injuries? To be sure, the jury and the trial court, by their verdict and judgment, have said that it was the former, but are we bound thereby under all of the obtaining circumstances and the law which is applicable thereto.

■ In the case of *Richmond* v. *Schonberger,* 111 Va. 168, 68 S. E. 284, 285, there was a suit for injuries sustained by Miss Schonberger in tripping over a projecting stone two and one-half inches above the level of the flagging as she was crossing a street which was constructed of flagging, the space between the flags being filled with stone blocks, one of these blocks constituted the projection referred to. There was a verdict for the plaintiff which was sustained by the trial court. Judge Keith, then President of this court,

said: "We are of opinion that the obstruction was not such as to render the city liable in damages." Thus this court announced, as a matter of law, that an obstruction two and one-half inches in elevation, under the circumstances of that case, did not render the city liable for the injuries sustained in consequence of the obstruction. In the case cited Judge Keith, in the opinion, quoted from the case of the *City of Richmond* v. *Courtney,* 32 Gratt. (73 Va.) 798, where it was said by Judge Christian, Judge Moncure concurring, that "A municipal corporation is not an insurer against accidents upon its streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day. It is not to be expected, and ought not to be required, that a city should keep its streets at perfectly level and even surfaces. Slight obstructions, produced by loose bricks in the pavement, or by the roots of trees which may displace the pavement, from the very nature of things cannot be prevented. And so there cannot be perfect uniformity of a level surface where curb stones and culverts are necessary to be constructed on the streets. In a large city, with many miles of paved streets, it must often happen from the very nature of the material out of which the pavement is constructed, that the bricks from the very wear and tear of the use to which they are subjected, will become broken and displaced so as to cause the fall of a person not careful in walking over them. Certainly if the obstructions are of such a character as those indicated, and which would not cause the fall of a person exercising ordinary care, the city in such case could not be held liable." It is true that distinguishing between the two cases Judge Keith noted that in the *Courtney Case* the obstruction was upon the sidewalk while in the *Schonberger Case* it was upon the crossing of a street and that the former was a more serious obstruction. This is also pointed out by counsel for the plaintiff in the case in judgment. In this connection we have this to

say, that every case is viewed in the light of the facts attending it, but the point we wish most to stress as to the *Schonberger Case* is that this court did not hesitate to substitute its own judgment upon a given state of facts for that of the verdict of the jury and the judgment of the court below.

In the *Schonberger Case* there was also cited the case of *Bigelow* v. *City of Kalamazoo,* 97 Mich. 121, 56 N. W. 339, 340, and *Weisse* v. *City of Detroit,* 105 Mich. 482, 63 N. W. 423, 424. In the former it was said: "Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from two to six inches higher than the pavement. The curb must be left bare and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. * * * Neither streets, sidewalks, nor cross-walks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms." In the latter case the accident was caused by one end of a plank, lying lengthwise in the walk being raised two inches above the adjoining plank, in a cross-walk. It was held not a defect in the walk so that it was not reasonably safe for travel. The court said: "If the plaintiff could recover in this case, every municipality would be compelled to exercise the most vigilant care over its streets to see that no rise of two inches occurred along the line of travel on side and cross-walks."

Counsel for the plaintiff strongly relies upon the case of *Richmond* v. *Rose,* 127 Va. 772, 102 S. E. 561, 568, 105 S. E. 554, in which this court through Judge Sims sustained a verdict and judgment for the plaintiff holding that the issues presented peculiarly a jury question. The facts in that case were quite dissimilar to those in the present case.

It was a sidewalk case. The sidewalk was three feet in width. The concrete blocks used in its construction had been lifted at the line of intersection by the roots of a tree and the break extended all the way across the sidewalk. The ends of the blocks stood perpendicularly above the level of the sidewalk and the elevation was from one inch on the inside to two inches on the outside of the walk. The entire walk was taken up or occupied by Mrs. Rose walking on the outside and a servant, a trifle behind her, pushing a baby carriage on the inside. Thus there was no sidewalk space that was unobstructed by the abrupt rise of the broken concrete. The pedestrian was obliged to take the hurdle as it was. The accident happened in midday but there was evidence tending to show that trees and other things cast shadows on the sidewalks at the place of the accident.

As was said by counsel for the city in the case in judgment a strong dissenting opinion was presented by Judge Prentis in the *Rose Case,* in which he took the position, in effect, which we are taking here, saying: "I am constrained to express my dissent from the conclusion of the majority in this case, because I think that conclusion is inconsistent with the controlling legal doctrine which is expressed in the opinion itself."

In the case of *Bohlkin* v. *Portsmouth,* 146 Va. 340, 131 S. E. 790, 792, 44 A. L. R. 810, Judge McLemore said for the court: "The frequency with which juries return verdicts against municipalities for personal injuries growing out of some irregularity on the street (often of a trivial nature), as in the case of *City of Richmond* v. *Rose,* 127 Va. 772, 102 S. E. 561, 105 S. E. 554, which a majority of the court felt constrained to affirm, together with the great respect accorded verdicts by the courts, have in some cases apparently left little of the conceded rule, that cities are not insurers of travelers upon their highways.

"It should be remembered that the duty of the trial judge to set aside a verdict of the jury where the same is not jus-

tified by the law and the evidence is just as imperative as is the duty to sustain the verdict where a contrary condition exists."

In the well considered case of *Beltz* v. *Yonkers*, 148 N. Y. 67, 42 N. E. 401, 402, it is said: "There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents, and whether, in any case, the municipality has done its duty, must be determined by the situation and what men knew about it before, and not after, an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but, when, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. Assuming that the defendant's officers were men of reasonable prudence and judgment, could they, in the exercise of these qualities, have anticipated this accident, or a similar one, from the existence of this depression in the walk. They could, undoubtedly, have repaired it at very little expense, but the omission to do so does not show, or tend to show, that they were negligent, unless the defect was of such character that a reasonably prudent man should anticipate some danger to travelers on the walk, if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe within the rule, and when accidents occur, the municipality must be treated practically as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment or a rule or liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to

be anticipated or foreseen in the exercise of reasonable prudence and care. But, when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which according to common experience was not likely to happen, it is not chargeable with negligence."

It may be said that the evidence in the case in judgment showed that no accidents of a similar nature had occurred by reason of the defect existing in the sidewalk on the street in question before the one with which we are concerned, at least, if there had been any, the city had not been made aware of it.

In the New York case cited the depression was one two and one-half inches in depth. It seems to us that the law and its reason is aptly, succinctly and impellingly expressed by the court in the New York case. Here we are concerned with a defect that had existed for three years or more. The depression at its greatest depth was one and one-eighth inches. The place of depression was a graduated one some twelve feet in length, the sidewalk was ten feet wide, affording ample space on either side of the defect for pedestrians to walk. Did the place present a type or character of condition that was obviously fraught with danger? We think not. On the other hand we think the conditions were such that reasonably prudent persons would say that they were unlikely to produce injuries. The reports teem with injuries in sidewalk cases. It would serve no good purpose for us to cite more of them or to elaborate upon them. The facts upon which they are decided vary in some degree in each of them and from the case in judgment.

As has been said by many of the appellate courts, slight defects and inequalities are found in the streets and sidewalks in every village, town, and city and we frequently see just such defects as obtain in the present case. To hold the city liable in this case under all the facts and circumstances peculiar to it would make it an insurer against injuries happening to pedestrians using its walkways. It follows that

we reverse the judgment of the court below and here enter judgment for the defendant.

*Reversed.*

CAMPBELL, C. J., concurring in result.

HUDGINS and CHINN, JJ., dissenting.

HUDGINS, J., dissenting.

As an original proposition I am inclined to agree with the majority opinion, but this court in the *City of Richmond* v. *Rose,* 127 Va. 781, 102 S. E. 561, 105 S. E. 554, settled the law in this State on the point involved. While there was a strong dissent by Judge Prentis in that case, on a rehearing no modification was made of the original opinion, and since 1920 numerous attacks by municipalities have been launched against the principles announced, with no modification prior to the publication of the majority opinion in this case. It is thus seen that the principles declared were not adopted without full consideration. The bench and bar in dealing with this class of personal injuries have accepted the principles in the *Rose Case,* and have governed themselves accordingly. Certainty in the law is highly desirable; uncertainty deplorable, and tends to endless confusion. The majority opinion, by implication at least, reverses the Rose and kindred cases, and on the question of the negligence of the municipality substitutes the judgment of the court for the judgment of the jury.

This court in the *Rose Case,* at pages 781, 782 of 127 Va., 102 S. E. 561, 564, 105 S. E. 554, said: "In the very nature of the case the problem involved in this question is ordinarily essentially a jury question. It is a complicated question of fact. It is not simply a matter of the height of the obstruction, but also of how unexpected its existence was to a person, such as the plaintiff, who had encountered no such obstructions elsewhere in that locality, and who did not previously know of its existence; of what its appearance

would reasonably be expected to be to one approaching it under the circumstances which attended the plaintiff * * *. These are all matters in their nature unsuited for decision other than by a jury, being in the case before us of such character that they admit of different conclusions by reasonable men."

The facts in the present case are stronger for the plaintiff than they were in the *Rose Case*. It would seem from the majority opinion that the negligence of the municipality depends upon the height of the obstruction or the depth of the depression. Where is the line to be drawn? It is safer and wiser to leave the conditions and circumstances to the jury as was done in this case, especially in view of the fact that no contributory negligence is here urged.

CHINN, J., concurs in this dissent.