# Richmond

## Daisy Mann Childress v. City of Richmond.

March 8, 1943.

Record No. 2616.

Present, All the Justices.

The opinion states the case.

*William C. Parkinson* and *S. R. Sanders, Jr.*, for the plaintiff in error.

*Horace H. Edwards* and *Olin A. Rogers*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Here we have another of the oft recurring accident cases arising from city street surface inequalities of one sort or another.

In this case Mrs. Childress complains because the trial court set aside a verdict for $1500.00 which a jury awarded her as damages for injuries which she sustained on account of the accident which we shall now briefly describe.

On September 17th, 1940, about eight o'clock in the evening, while walking along Granby Street in the city of Richmond, with her daughter and son-in-law, Mrs. Wright and Dr. Wright, she came to Floyd Avenue, and in attempting to cross it, she stepped down from the sidewalk of Granby Street to Floyd Street and in making the next step, in her progress, she stepped into a hole or depression in the latter way and was thrown down or fell on her right knee breaking the kneecap in several places. She suffered severe pain and was confined to her bed for six weeks and was put to considerable hospital and medical expense. Dr. James T. Tucker said that she sustained permanent disability to the extent of ten per cent of her normal capacity.

The hole or depression was eighteen inches from the Floyd Avenue curbing. It was a jagged and irregular broken place fifteen inches in length, eight inches in width and one and five-eighths inches in depth in the larger part of its area. Dr. Wright described it in these words:

"Yes, it wasn't straight down an inch and five-eighths but it was a broken out place and at the far side you can see it is much deeper than it is at the curb side probably."

The three persons were walking abreast with Mrs. Childress on the outside when the accident happened.

The city was charged with negligence in failing to provide a reasonably safe place for pedestrians to travel and in suffering an allegedly dangerous condition to exist in its street for a period of from six months to two years and in allowing the presence of shade trees and foliage which ob-

structed the light rays, making the crossing dark and obscuring the defect in the walkway.

It was also charged with negligence in shading a street light, to prevent it from shining in the windows of a corner residence, which deflected the light and kept it from illuminating the place of the defect.

We have already indicated the jury's verdict for the plaintiff and the action of the court in setting it aside. From this ruling Mrs. Childress sought and obtained a writ of error.

Counsel for the city suggest the presence of but two points for our concern.

One is does the evidence disclose a condition upon which can be predicated the city's failure to observe its duty to use reasonable care to provide and maintain its streets in a reasonably safe travelable condition for pedestrians and others?

Succinctly, was the city guilty of primary negligence?

The other, contributory negligence, we eliminate from consideration, because, we think, there is no primary negligence.

The major matter which overshadows all others is that of primary negligence as applicable to the defendant.

This court said in the case of *Richmond* v. *Schonberger,* 111 Va. 168, 68 S. E. 284:

"In that case, (*City of Richmond* v. *Courtney,* 32 Gratt. (73 Va.) 798), the obstruction was upon the sidewalk; in this, the obstruction was upon the crossing of a street, which it is true may be considered, in a sense, as a part of the sidewalk; but it is only reasonable to say that one passing over a street crossing may more reasonably expect obstructions, and should, therefore, exercise a greater degree of care than upon the sidewalk, strictly so-called. To hold the city liable for every slight inequality in its streets would, we think, be altogether unreasonable.

"In *Bigelow* v. *City of Kalamazoo,* 97 Mich. 121, 56 N. W. 339, it is said: 'Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be

carried, and at the crossings they are from two to six inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor cross-walks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. * * * Cities are not required to keep streets in a condition absolutely safe for travel. A cross-walk must be reasonably safe; reasonably safe in view of the purpose for which it is constructed, the necessary uses of the street, and all the varying conditions.'

"In *Weisse* v. *City of Detroit*, 105 Mich. 482, 63 N. W. 423, it appears that there was a rise in a cross-walk, caused by one end of a plank, lying lengthwise in the walk, being raised two inches above the adjoining plank. It was held not a defect in the walk so that it was not reasonably safe for travel. The court said: 'If the plaintiff could recover in this case, every municipality would be compelled to exercise the most vigilant care over its streets to see that no rise of two inches occurred along the line of travel on side and cross-walks.' "

In the case of *Richmond* v. *Courtney, supra,* this was said: "In a large city, with many miles of paved streets, it must often happen from the very nature of the material out of which the pavement is constructed, that the bricks from the very wear and tear of the use to which they are subjected, will become broken and displaced so as to cause the fall of a person not careful in walking over them. Certainly if the obstructions are of such a character as those indicated,

and which would not cause the fall of a person exercising ordinary care, the city in such case could not be held liable."

In *Roanoke* v. *Sutherland*, 159 Va. 749, 167 S. E. 243, we had before us a case as nearly similar, in all important particulars, to this one as cases ever happen to be and there we felt constrained by law and reason to nullify a verdict for $8000.00 which was approved by the trial court.

The accident in that case happened on the sidewalk. In the middle of the sidewalk of one of the important streets of the city of Roanoke where two rows of concrete blocks came together the block on the inner side of the sidewalk had sunk below the block next to the curb. The depression ran parallel with the curb and extended about twelve feet in the center of the sidewalk. The deepest part of the depression was one and one-eighth inches. The entire distance of twelve feet presented a depression averaging three-fourths of an inch. The light conditions of visibility and obscurity were very like those here. We held that the city was without actionable primary negligence and, among other authorities, we quoted, as applicable and potential the law announced in 13 R. C. L. 351, section 289:

"A municipal or quasi municipal corporation is not responsible for every accident that may occur on its streets or highways, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions or defects therein. Nor does it warrant that its streets shall be free from obstructions or defects or that they will be absolutely perfect and safe at all times."

And we quoted further:

"A reasonable degree of care is required of cities in constructing their sidewalks and in keeping them in repair. This is so well established that it is needless to cite authorities with reference thereto.

"What is reasonable care depends upon the danger." Amer. & Eng. Ency. of Law, Vol. 21, 466.

"Where any particular act or omission is obviously and indisputably dangerous or the reverse, the court may say that it is evidence of or shows negligence, or express

the opposite view." Amer. & Eng. Ency. of Law, Vol. 21, 504.

"Or, as the rule has been otherwise expressed, though the facts are not disputed, negligence is still a question for the jury if different conclusions might be drawn by the minds of reasonable men from the facts as established. * * * But this rule does not, as has been seen, apply where the act or omission in question is clearly and obviously fraught with danger, or of a nature indisputably harmless and unlikely to produce injury." Amer. & Eng. Ency. of Law, Vol. 21, 506.

In Richmond, and doubtless in other cities throughout the country, may be observed many such places as that complained of. It is very impractical, if not impossible, to avoid this condition, especially in street crossings, as here. The nature of the materials of which the pavements are constructed and the constant wear and tear of endless traffic of every character render any other situation out of the question.

The depression to which the accident was attributed was not only not "clearly and obviously fraught with danger", but it was "of a nature indisputably harmless and unlikely to produce injury".

In this case, were the city held to be guilty of actionable negligence, it would be legally accounted an insurer of the safety of persons travelling its streets, under like conditions, which is not, and ought not, to be the law.

See *Staunton* v. *Kerr*, 160 Va. 420, 168 S. E. 326.

In accordance herewith, the judgment of the trial court is,

*Affirmed.*