## MEDICAL CENTER HOSPITALS, T/A NORFOLK GENERAL HOSPITAL

### V.

## EMILY P. SHARPLESS

Record No. 820978

Decided June 14, 1985, at Richmond

Present: All the Justices

*Alex T. Mayo, Jr. (Becky A. Powhatan; R. Barrow Blackwell; Kaufman & Canoles*, on briefs), for appellant.
*O. L. Gilbert (Rabinowitz, Rafal, Swartz & Gilbert, P.C.*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is a defendant's appeal from a judgment entered upon a jury verdict awarding the plaintiff $20,000 in damages in a trip-and-fall case. The dispositive issue is whether the defendant, Medical Center Hospitals, t/a Norfolk General Hospital, was guilty of primary negligence in the construction and maintenance of a sidewalk on its premises. Because we find the evidence insufficient to establish actionable negligence, we need not consider the hospital's contention that the plaintiff was guilty of contributory negligence.

On the afternoon of November 2, 1980, a bright, sunny day, the plaintiff, Mrs. Emily P. Sharpless, went to visit her mother who was a patient in the hospital. The entrance to the hospital was served by a horseshoe-shaped sidewalk constructed of concrete slabs. Normally, Mrs. Sharpless used the left arm of the horseshoe. Because she had parked in a different place on this occasion, she used the right arm. As she approached the entrance, she "caught [her] toe" in an expansion joint separating two concrete slabs, "pitched forward completely", and suffered extensive facial injuries.

William T. Powell, the plaintiff's father, examined the sidewalk shortly after the accident. Powell testified that the slab which caused the fall was higher than the adjacent slab. "I measured with my finger," he said, and "[i]t graduates down . . . about a half-inch [at one point] and goes down about, I would say, an inch, inch and a quarter, maybe a little more."

The plaintiff called A. Carl Schenck to testify as an expert in the design and construction of sidewalks. Schenck explained that concrete slabs must be separated by an expansion joint to accommodate seasonal expansion and contraction. When properly constructed, a pliable material is inserted at a depth of half an inch

below the surface of the slabs and covered with a "filler". He said that because there was no filler in the joint in question, there was a depression measuring half an inch. He found the space between the two slabs "open at one end approximately an inch and an eighth. And at the other end, approximately an inch and a half." In his opinion, the joint "was defective when it was installed." On cross-examination, he stated that he "did not look at a difference in elevation between the two slabs" and had made no measurement of that dimension.

Bill Hollingsworth, the hospital's safety and security officer, measured the difference in elevation with "an actual ruler" and "came up with a measurement of a half inch" at "[t]he deepest part." The 900-bed facility had a staff of 3000, and Hollingsworth estimated that "well over 2000" people use the sidewalk on a daily basis. He said that no accidents had been reported in the vicinity of this expansion joint during the five years he had worked for the hospital.

We have cautioned that a jury instruction expounding the duty owed by municipal corporations to sidewalk pedestrians is not necessarily "appropriate to the owner-invitee context". *Mary Washington Hosp. v. Gibson*, 228 Va. 95, 101-02, 319 S.E.2d 741, 745 (1984). Here, the trial court instructed the jury that the hospital had the duty "[t]o use ordinary care to have the premises in a reasonably safe condition for an invitee's use consistent with the invitation; but the [hospital] does not guarantee the invitee's safety". As thus defined, a hospital's duty is virtually indistinguishable from that owed by municipal corporations. We do not decide whether the definition was appropriate in this case. The instruction, given without objection, was the law of the case, both parties relied in post-verdict trial briefs on our opinions in trip-and-fall cases against municipal corporations, and we will analyze the case on appeal as it was tried below.

In *Roanoke v. Sutherland*, 159 Va. 749, 167 S.E. 243 (1933), the plaintiff stumbled over a concrete sidewalk block which was elevated one and one-eighth inches above the surface. Although the evidence showed that there had been no reports of previous accidents at that point, the jury awarded the plaintiff $8000 in damages for the injuries she sustained in the fall. We found that the plaintiff had failed to prove actionable negligence, reversed the judgment, and entered final judgment for the city.

"[W]hen, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. . . . [M]unicipal corporations [have] the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But, when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which according to common experience was not likely to happen, it is not chargeable with negligence."

*Id.* at 758-59, 167 S.E. at 246 (quoting with approval from *Beltz* v. *Yonkers*, 148 N.Y. 67, 70-71, 42 N.E. 401, 402 (1895)).

Again, in *City of Newport News* v. *Anderson*, 216 Va. 791, 223 S.E.2d 869 (1976), the jury awarded a verdict to a plaintiff who had fallen and injured herself when she caught her heel in a "depression in the sidewalk located at an expansion joint, which measured three inches long, four inches wide and one inch deep at the deepest point." *Id.* at 792, 223 S.E.2d at 870. As in *Sutherland*, we held that the defect was not actionable, reversed the judgment, and entered final judgment for the defendant. Explaining our decision, we said:

A municipality is charged with the duty of maintaining its sidewalks in a safe condition, free from defects and obstructions dangerous to pedestrians exercising ordinary care. A municipality is not, however, an insurer against all accidents which may occur on its sidewalks. A municipality need only maintain its sidewalks in a reasonably safe condition for travel in the ordinary modes. It is not expected, nor is it required, to keep the surface of its sidewalks perfectly level and even.

Not every defect in a sidewalk, even though it may have caused the injury sued for, is actionable. When the defect is so slight that reasonable men could not differ in concluding that it would not endanger travel in the ordinary modes by persons exercising ordinary care, the municipality is free of negligence as a matter of law and a trial court may not sustain a verdict holding the municipality liable.

*Id.* at 792-93, 223 S.E.2d at 870 (citations omitted).

■ Viewing the evidence in the light most favorable to Mrs. Sharpless, and applying the principles in *Sutherland* and *Anderson*, we hold that the plaintiff failed to prove that the hospital was guilty of actionable negligence. Accordingly, we will reverse the judgment and enter final judgment for the hospital.

*Reversed and final judgment.*