**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-1972**

CAMILLE SEDAR,

       Plaintiff - Appellant,

    v.

RESTON TOWN CENTER PROPERTY, LLC; BOSTON PROPERTIES LIMITED PARTNERSHIP,

       Defendants - Appellees,

and

BOSTON PROPERTIES, INC; BEACON CAPITAL PARTNERS, LLC,

       Defendants,

    v.

CDA INCORPORATED, d/b/a MaxSent,

       Third Party Defendant.

Appeal from the United States District Court for the Eastern District of Virginia at Alexandria. Claude M. Hilton, Senior District Judge. (1:18-cv-01111-CMH-TCB)

Argued: January 25, 2021                Decided: February 22, 2021

Before KING, FLOYD, and QUATTLEBAUM, Circuit Judges.

Reversed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge King and Judge Floyd joined.

---

**ARGUED:** David J. Sensenig, PARK SENSENIG LLC, Richmond, Virginia, for Appellant. David Drake Hudgins, HUDGINS LAW FIRM, PC, Alexandria, Virginia, for Appellees. **ON BRIEF:** Andrew R. Park, PARK SENSENIG LLC, Richmond, Virginia, for Appellant. Joseph P. Moriarty, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellees.

---

QUATTLEBAUM, Circuit Judge:

This premises liability case involves the application of the well-established standards for summary judgment. Following a serious fall down a short flight of stairs, Camille Sedar sued the defendants for negligence and negligence *per se*. The district court granted summary judgment to the defendants, holding that Sedar did not offer sufficient evidence that there was a dangerous condition, that the defendants had notice of the condition or that the alleged dangerous condition caused her fall. Because the record contains enough evidence to create a genuine issue of material fact as to these issues, we reverse and remand for further proceedings.

I.

On a pleasant November afternoon, Sedar and several of her colleagues drove to Reston Town Center to celebrate a friend's overseas deployment over lunch. Sedar drove herself and two others, while the rest traveled in a separate car. Sedar's car arrived first and parked on the ground level of a parking garage available to Reston Town Center patrons.

To exit the garage, pedestrians had to climb a short flight of stairs inside the garage, cross a landing paved with bricks and descend a flight of five concrete steps to the sidewalk outside. While exiting the garage, Sedar, several steps ahead of her companions, was wearing flat-soled shoes and carrying a two-to-three-foot-wide photograph in one hand and her wallet in the other. At some point, when she either was crossing the landing or beginning to descend the stairs, Sedar tripped and fell, landing face first on the concrete

sidewalk. The fall was severe. Sedar lost consciousness, sustained a concussion, fractured her elbow and split open her lip and other parts of her face, leaving blood on the sidewalk.

Sedar has no memory of the fall. The last thing she remembers is walking through the garage toward the pedestrian exit. And neither of Sedar's companions, who were trailing several steps behind her in conversation, saw precisely what caused her to trip. One colleague only noticed Sedar as she hit the ground "face down." J.A. 223. The other saw Sedar "disappear from [his] field of vision" as she fell over the stairs before seeing the photograph she was carrying in the air. J.A. 264–67.

Sedar's companions did, however, provide more information on Sedar's path of travel. Although there are some differences in their testimonies regarding Sedar's path, both place her over loose bricks right before the top of the stairs. One immediately noticed loose bricks at the top of the stairs, which created "space between the brick and the actual ground." J.A. 228. She testified that those loose bricks must have caused Sedar's fall. When rushing to assist Sedar, she "walked over to the side" to avoid the bricks. J.A. 229. After ensuring emergency help was on the way, she returned to the top of the stairs to examine the bricks, bringing them to others' attention. The other colleague noticed the loose bricks when he went back after lunch with others to investigate. When he inspected the landing, he discovered loose bricks "directly in front of the area where we were walking down the stairs." J.A. 281.

After Sedar's fall, the rest of the group arrived and took several photographs and a video of the scene. The video depicts a loose brick at the top of the stairs to the right of

4

where Sedar's blood stained the sidewalk below. The photographs show uneven bricks and sagging caulk between the bricks and the top step.

When Sedar retrieved her shoes upon leaving the hospital, she immediately noticed a large gray scuff at the tip of her right shoe. She claims this scuff had not been present before the fall.

Sedar retained a structural engineer to review the evidence and prepare an expert report. Relying on the witness testimony, photographs and the scuff on Sedar's shoe, her expert determined that the evidence demonstrated loose and unstable bricks and deteriorating caulk at the landing, which was "structurally unsound and a hazard that violated applicable building and maintenance codes." J.A. 434. He also opined that this hazard "most likely caused [Sedar] to lose her balance and fall down the stairway." J.A. 434.

II.

Turning now to the procedural background, Sedar sued the property owner, Reston Town Center Property ("RTCP"), and the property manager, Boston Properties, in state court asserting claims of negligence and negligence *per se*. The defendants then removed the case to federal court and brought a third-party complaint against MaxSent, with whom they had contracted to provide security, emergency service and monitoring of the property

5

conditions.[1] Following discovery, the defendants moved for summary judgment, asserting there was no dangerous condition, and, even if there were, they did not have notice of the condition. Moreover, even if they were negligent, the defendants argued, Sedar did not offer enough evidence that she tripped over the alleged hazard and thus had not created a genuine issue of material fact as to causation.[2]

The district court granted the defendants' motion. It held Sedar could not succeed on her claims because she "produced no evidence that Defendants had either actual or constructive notice of the defects in the bricks and caulking" on the landing. J.A. 1042. The district court also stated that "Virginia law does not impose liability under the ordinary duty of care to remedy sidewalk irregularities that are, as here, under an inch or two." J.A. 1042. In addition, even if Sedar had enough evidence of negligence, the district court held that she "produced no more than mere speculation that [the alleged defects] were the cause of her accident." J.A. 1073.

Sedar timely appealed, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

---

[1] Under the contract, MaxSent was to "[n]otify [RTCP's] representative immediately of all hazards, safety violations or other conditions that warrant an unsafe condition." J.A. 48.

[2] The defendants also filed a motion to exclude the expert testimony under Fed. R. Evid. 702, arguing that it failed to satisfy the reliability standard established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Because the district court never ruled on this motion, we consider the expert's testimony and report as part of the record.

## III.

We review the grant of summary judgment de novo. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). In so doing, we first review the well-settled principles for a summary judgment motion before applying those standards to the issues Sedar raises on appeal.

## A.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue. *Celotex Corp.*, 477 U.S. at 323. Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

Yet, "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al.,

7

Federal Practice & Procedure § 2728 (3d ed. 1998)). The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 659–60.[3]

---

[3] Standards are easy to recite, but harder to apply. Part of that difficulty, at least for summary judgment standards, lies with confusing terminology like "a scintilla of evidence." After all, what in the world is a "scintilla?" Given federal courts, as noted above, require more than a scintilla of evidence to avoid summary judgment, understanding what a scintilla is seems necessary to understand if a party has exceeded it. But dating back to the nineteenth century, courts have struggled with the "distinction between what is a scintilla" and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line" evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.'" In fact, the word does have Latin origins—"Scintilla was the name of a reveler in the debauches described by Petronius in *The Satyricon*." William Powers, Jr., *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L. Rev. 515, 521 n.15 (1991). Nonetheless, a review of caselaw suggests Justice Few may have a point. *Compare Kurtz v. Fels*, 389 P.2d 659, 663 (Wash. 1964) (holding that proof beyond a mere scintilla requires "facts to be assessed by the senses" and something "tactile" rather than calculations), *with Gibson v. Epting*, 827 S.E.2d 178, 181 (S.C. Ct. App. 2019) (describing scintilla as "a perceptible amount" and "not something conjured up by the shadows"), *and Davies v. McDowell Nat. Bank*, 180 A.2d 21, 30 (Pa. 1962) (dissent) ("'Scintilla' means *spark*."). To overcome the vagaries inherent in the term "scintilla," courts should not only recite our well-settled standards in considering Rule 56 motions, but also actively engage with the requirements to provide "specific, material facts" about "genuine issues" and to avoid "conclusory allegations and denials" in analyzing the arguments of the parties.

B.

Utilizing those principles, we turn to Sedar's arguments on appeal.

1.

Sedar first contends the district court erred in concluding there was no genuine issue of material fact regarding the existence of a dangerous condition. Under Virginia law, a property owner owes an invitee a duty to exercise ordinary care to "render [the premises] reasonably safe for the invitee's visit." *Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 274 (Va. 2009). An owner need not, however, provide notice to an invitee of a dangerous condition that is "open and obvious." *Id.* (quoting *Knight v. Moore*, 18 S.E.2d 266, 269 (Va. 1942)). If reasonable persons "differ as to whether an accident could or should have been reasonably anticipated" from a condition, the jury must decide whether the condition was dangerous. *Id.* (quoting *City of Roanoke v. Sutherland*, 167 S.E. 243, 246 (Va. 1933)).

To support her claim of a dangerous condition, Sedar offered photographs, taken the day of her fall, that depict unlevel bricks and sagging caulk, creating a lip where she contends someone could trip right before descending the stairs. She also points to the video taken after the incident that illustrates how the loose bricks move when stepped on. Next, she relies on the testimony of her colleagues. One colleague testified that she immediately noticed the danger as she rushed to help Sedar, while the other noticed afterwards that there were loose bricks in the area where Sedar fell. Finally, Sedar offered her expert's report and testimony. He concluded that the "large open gap adjacent to the loose brick likely creates a trip hazard as the front edge of the brick shifted downward." J.A. 998.

The defendants, in response, argue that the loose bricks and sagging caulk gap were not dangerous enough to be considered a hazard. In support of their argument, they point to cases dealing with sidewalk irregularities, such as holes, depressions, or bumps in pavement. *See Med. Ctr. Hosp. v. Sharpless*, 331 S.E.2d 405 (Va. 1985); *City of Newport News v. Anderson*, 223 S.E.2d 869 (Va. 1976); *Childress v. City of Richmond*, 24 S.E.2d 419 (Va. 1943). These cases hold that a small irregularity in a sidewalk does not create a hazard because "it would not endanger travel in the ordinary modes by persons exercising ordinary care." *Med. Ctr. Hosp.*, 331 S.E.2d at 407.

But our situation is distinguishable from a sidewalk irregularity. First, this alleged hazard was not an irregularity in pavement that was fixed in place. The path here was made of bricks, some of which were loose. That is a different risk than stepping in a stationary depression or getting tripped up by something fixed in place. *See City of Newport News*, 223 S.E.2d at 870 (heel getting stuck in a pavement hole causing fall). Second, a sidewalk irregularity is typically visible to anyone who looks. But a loose brick may not be obvious to the reasonable person walking on a brick pathway. Third, the condition here was located at the top of stairs. If there is a fall, the risk of tripping at the top of stairs is arguably greater than the risk of falling on a flat surface.

For these reasons, the cases involving sidewalk irregularities do not control our outcome. The defendants certainly can argue to the jury that the conditions Sedar complains about are not significant enough to rise to the level of a dangerous condition. And they may win. But from our review of the record, construing facts in the light most favorable to Sedar, the photographs, videotape and testimony by fact and expert witnesses

10

constitute specific, material evidence relevant to a genuine issue based on her claims—the dangerousness of the conditions at the Reston Town Center. Accordingly, she has produced sufficient evidence from which a reasonable jury could conclude the loose bricks and the gap between them and the step posed a dangerous condition.

2.

Sedar next contends the district court erred in concluding there was no genuine issue of material fact concerning the defendants' notice of the dangerous condition. An owner is liable to an invitee injured from a dangerous condition if the owner "knew it existed, or by the exercise of reasonable care should have discovered its existence, and failed to remedy the condition or otherwise to protect the invitee against the danger." *Appalachian Power Co. v. Sanders*, 349 S.E.2d 101, 105 (Va. 1986).

Sedar claims the defendants had actual notice of the alleged dangerous condition, relying on the testimony of Anthony Swartz, a MaxSent employee and supervisor. Shortly after the fall, Swartz arrived to ensure Sedar was receiving aid, and he investigated the incident. He does not recall whether he identified any loose bricks, but he testified that it was "a very tricky area of the property." J.A. 381. He explained that he had "almost tripped on the stairwell a thousand times" on "[e]ither the brick or the step itself" prior to Sedar's fall because of "the way that it transitions from the garage to the stairs." J.A. 382–83.

At first glance, this testimony appears to support Sedar's argument regarding actual notice. When considered fully in context, however, Swartz's testimony is not evidence of actual notice of the type of hazard Sedar alleges. Swartz describes his difficulties resulting not from loose bricks, but from "the layout" of the landing and "the way that it transitions

11

from the garage to the stairs." J.A. 810–11. Sedar complains about a different hazard—one from loose bricks and sagging caulk. Swartz unequivocally testifies that he never tripped because of loose bricks in the area. And even though Swartz testifies about almost tripping over the lip of the stairs—not the loose bricks—he cannot place a timeframe on those instances. Finally, but importantly, after his investigation, Swartz inspected the area for a safety hazard, but concluded that the bricks did not pose one, further clarifying that Swartz's difficulties with the area were not from the hazard Sedar alleges.

The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require us to accept cherry-picked snippets of testimony divorced from their context. Thus, even if Swartz's notice could be imputed to the defendants, his testimony does not create a genuine issue of material fact that he had notice of the hazard Sedar claims caused her fall.

But actual notice is not required to sustain Sedar's claim. She can satisfy the notice requirement by demonstrating constructive notice. *See Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993). Constructive notice "may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Id.* at 890. Sedar contends she did this through her photographs which, according to her, indicate the loose bricks and resulting gap were not new and likely existed for a significant time prior to Sedar's fall. Sedar's expert, moreover, testified that "the sagging and deteriorating caulk joint immediately adjacent to the loose brick paver would have been visible during routine maintenance inspections and activities." J.A. 895.

12

He further reasoned that the "conditions did not develop overnight but were formed over at least several months." J.A. 998–99.

This evidence is more than conclusory allegations. To the contrary, it includes specific, material facts because they help prove the existence of a dispositive issue of Sedar's claim. It also creates a genuine issue because a reasonable jury could conclude that the conditions were in a well-trafficked area and "existed for such a length of time as to make it defendant's duty in the exercise of ordinary care to have discovered it." *Miracle Mart, Inc. v. Webb*, 137 S.E.2d 887, 890 (Va. 1964). Thus, there is a genuine issue of material fact as to whether the defendants had constructive notice of the hazard.

3.

Sedar finally contends the district court erred in determining that she had not presented evidence creating a genuine issue of material fact concerning causation. Under Virginia law, in order to succeed on a negligence claim, a plaintiff must show "*why* and *how* the incident happened; if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004) (internal quotation marks omitted).[4]

The defendants contend that because Sedar did not provide direct evidence that she actually stepped on a specific brick or lip, her case cannot go to the jury. But causation can be proved by circumstantial evidence. In fact, "circumstantial evidence is treated no

---

[4] As the district court did not specifically address Sedar's negligence *per se* claim, we decline to do so here. However, to the extent the district court's grant of summary judgment covered the negligence *per se* claim and was based on a lack of causation, we hold that a genuine issue of material fact exists.

13

differently than direct evidence." *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989). Virginia's model jury instructions make this bedrock principle explicit: "[a]ny fact that may be proved by direct evidence may be proved by circumstantial evidence . . . ." *Virginia Model Jury Instructions-Civil* No. 2.100 ("Circumstantial Evidence"). Thus, if Sedar provides circumstantial evidence from which a reasonable juror could make "legitimate inferences and deductions" that she tripped on the loose bricks and sagging caulk, she satisfies her burden to overcome the defendants' motion as to causation. *Id.*

Sedar first presents her colleagues' testimonies that establish her path of travel crossed over the loose bricks and lip created by the sagging caulk. Although neither specifically saw Sedar step on a loose brick or get her foot caught in the lip, they were aware of her general path, and both placed her crossing over the allegedly hazardous area. Second, one of the colleagues immediately noticed the condition right after Sedar had fallen and "walked over to the side" to avoid it in her rush to assist an unconscious Sedar. J.A. 228–29. Third, the photographic evidence shows the condition in line with Sedar's bloodstains at the foot of the stairs, from which a jury could infer that she crossed over the condition before her fall. Fourth, the tip of Sedar's right shoe has a noticeable gray scuff, which she testified was not present before her fall. A reasonable jury could conclude that this scuff is consistent with her shoe getting caught in the lip before the stairs. Fifth, Sedar fell headfirst, which she insists is more consistent with getting tripped up than with missing a step. Finally, Sedar's expert concluded, based on the evidence available to him, that a loose brick exposed her toe to the lip at the top of the stairs and "most likely caused [Sedar] to lose her balance and fall down the stairway." J.A. 434.

14

The defendants vigorously dispute this evidence. They point to inconsistencies in the testimony of Sedar's colleagues regarding Sedar's path of travel. One colleague testified that Sedar was walking in the middle pathway of the stairs, whereas the other identified a different section of the stairway as Sedar's path. The defendants also argue that there are "more probable" explanations for Sedar's fall. Appellee's Br. at 26. They suggest she "either failed to notice the stairs . . ., was blinded by bright sunlight as she exited the dark garage, or simply lost her step . . . ." *Id.* And finally, they contend that the colleague who saw Sedar disappear from his field of vision last remembers seeing her at approximately his eye level. Based on testimony that Sedar was about a head taller than him, the defendants insist Sedar had moved past the loose bricks and sagging caulk such that any fall occurred once she had begun to descend the stairs.

The record contains evidence that support these arguments. And a jury could find them persuasive and reject Sedar's evidence. Or it could do the opposite. We make no comment on which parties' evidence is more persuasive. We only ask whether Sedar has provided "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 655 (4th Cir. 2017). We conclude that she has. Under Rule 56, when "causal facts are in dispute, . . . summary judgment is not appropriate." *Id*. at 654–55.

IV.

Rule 56 is an important tool for district courts to use in the management of their cases. As the Supreme Court has noted, summary judgment is not "a disfavored procedural

shortcut," but instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327. Therefore, when a party fails to demonstrate the existence of a genuine issue of material fact, the court should grant summary judgment. But when genuine issues of material fact exist, the case should be resolved by a jury, not the court. That is what we have here. Thus, for the reasons set forth above, the district court's grant of summary judgment is

*REVERSED.*