**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 20-1544**

───────────

FRIENDS OF THE CAPITAL CRESCENT TRAIL; JOHN MACKNIGHT
FITZGERALD; LEONARD SCENSNY,

        Plaintiffs - Appellants,

      v.

UNITED STATES ARMY CORPS OF ENGINEERS; COL. JOHN T. LITZ,
Commander and District Engineer United States Army Corps of Engineers; CHIEF
JOSEPH P. DAVIA, Chief, Maryland Section, Northern United States Army Corps
of Engineers,

        Defendants - Appellees,

      and

MARYLAND DEPARTMENT OF TRANSPORTATION, MARYLAND
TRANSIT ADMINISTRATION

        Intervenor/Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
James K. Bredar, Chief District Judge.  (8:19−cv−00106−JKB)

───────────

Argued:  March 11, 2021                 Decided:  May 13, 2021

───────────

Before KEENAN, QUATTLEBAUM, and RUSHING, Circuit Judges.

───────────

Affirmed by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Quattlebaum and Judge Rushing joined.

———————————

**ARGUED:** David W. Brown, KNOPF & BROWN, Rockville, Maryland, for Appellants. Sommer H. Engels, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Albert M. Ferlo, Jr., PERKINS COIE LLP, Seattle, Washington, for Appellees. **ON BRIEF:** Eric Grant, Deputy Assistant Attorney General, Kevin McArdle, Gustavus Maxwell, Sarah A. Buckley, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Gregory McDonough, Katherine T. Wainwright, UNITED STATES ARMY CORPS OF ENGINEERS, Washington, D.C., for Defendants-Appellees. Brian E. Frosh, Attorney General, Julie T. Sweeney, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland; Julie Wilson-McNerney, PERKINS COIE LLP, Seattle, Washington, for Intervenor/Defendants-Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

This case involves the lengthy planning process for a mass transportation project to connect the Maryland suburbs of Washington, D.C. After years of receiving public comments and evaluating various alternative proposals, the Maryland Transit Administration (Maryland) and the Federal Transit Administration (collectively, the transit agencies) selected a light rail option known as the Purple Line. The Purple Line is planned to extend 16 miles through the Maryland suburbs and to connect to existing mass transit options, including the Washington Metrorail.

At issue in this appeal is the Army Corps of Engineers' (the Corps) decision to grant Maryland a permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, which enables Maryland to discharge certain pollutants into nearby wetlands and waterways during construction of the Purple Line. The plaintiffs, an environmental organization and two concerned residents, argue that in issuing the permit, the Corps unreasonably relied exclusively on alternatives for the project evaluated during a prior environmental review process, and failed to consider certain unspecified bus alternatives that may have created a lesser environmental impact.

In a comprehensive opinion, the district court concluded that the Corps' decision to issue a permit was not arbitrary or capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The court rejected the plaintiffs' contention that the Corps should have considered additional hypothetical alternatives, given the relatively minor impact the project would have on nearby wetlands. We agree with the district court's analysis and affirm the court's judgment.

3

I.

For more than 20 years, Maryland authorities have been planning to construct a mass transportation corridor connecting the growing population centers in Montgomery and Prince George's Counties. To obtain federal funding for the project, *see* 49 U.S.C. § 5309(c), the transit agencies were required to complete the environmental review process set forth in the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332; *see also* 49 U.S.C. § 5309(d)(1)(A)(i)(II)-(d)(1)(B). In 2003, the transit agencies began preparing the environmental impact statement required by NEPA, 42 U.S.C. § 4332(C). In their notice of intent to prepare an environmental impact statement, the transit agencies explained that the NEPA review would

> address the need to improve transit access, reduce travel times and improve connectivity in response to regional growth, traffic congestion, and land use plans for the area. [The environmental impact statement] will examine potential impacts and benefits to the social, cultural, economic, built and natural environment. [The statement] will develop and evaluate alternatives that are cost efficient and beneficial. Improvements that enhance connections to existing transit systems, increase access to transit and to economic development areas, and minimize adverse impacts will be identified.

After receiving extensive input from government officials and the public, the transit agencies identified eight proposals in 2008 for more detailed analysis and consideration. These included a "no-build" option, which would not involve any new construction, and a Transportation System Management (transportation management) option, which would attempt to improve transportation services on preexisting roadways, including "improved bus service." The transit agencies also identified three bus rapid transit options (the rapid bus options) and three light rail transit options (the light rail options), each requiring

4

varying levels of investment. The rapid bus and light rail alternatives would use some dedicated surface lanes, some shared lanes, and some exclusive guideways, depending on the level of investment. As the district court explained, the transit agencies had, prior to identifying the eight proposals for more detailed analysis and consideration, considered additional rapid bus and light rail alternatives, but had rejected these options for various reasons, "including poor travel times, property impacts, environmental impacts, cost, and public opposition."

After a ninety-day comment period, Maryland selected the medium-investment light rail option as the "Locally Preferred Alternative" (the Purple Line), which the Federal Transit Administration included in the final environmental impact statement issued in 2013. The Federal Transit Administration solicited additional comments on the final environmental impact statement, and in 2014 issued its Record of Decision approving the medium-investment light rail alternative. Two of the plaintiffs in the present case, the environmental group Friends of the Capital Crescent Trail and John Fitzgerald, filed suit in the district court for the District of Columbia, challenging the Record of Decision as failing to satisfy the requirements of NEPA. *See Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 200 F. Supp. 3d 248 (D.D.C. 2016), *rev'd in part*, 877 F.3d 1051 (D.C. Cir. 2017). The D.C. Circuit ultimately considered and rejected the claim, upholding the adequacy of the NEPA process. *See Friends of Cap. Crescent Trail*, 877 F.3d at 1063-66. Maryland initiated construction of the Purple Line in August 2017, shortly before the D.C. Circuit issued its decision.

5

While the NEPA litigation was pending, Maryland filed an application for a permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344 (the Section 404 permit, or the permit). If granted by the Corps, the permit would allow Maryland to discharge certain pollutants into nearby wetlands and waterways during construction of the Purple Line. *See* 33 U.S.C. § 1344(a), (d). The Corps opened a three-month-long comment period on Maryland's request for a permit and received extensive public input, including negative comments from the plaintiffs in this case. The Corps also requested, and Maryland provided, additional information regarding its analysis of the project alternatives.

In 2018, the Corps granted Maryland's application for a Section 404 permit and issued a Memorandum for Record explaining its decision. The Corps defined the purpose of the project as seeking

> [t]o provide an expedited east-west mass transit service connecting major activity centers in a corridor extending from Bethesda to New Carrollton; to provide improved connections and travel times to the Metrorail services located in the corridor; and to improve connectivity to the communities in the corridor located between the Metrorail lines.

In reviewing Maryland's request, the Corps incorporated by reference the NEPA analysis of the environmental impact of the eight project alternatives. The Corps also conducted its own review of the aquatic impacts and the practicability of each proposal. The Corps rejected the no-build and transportation management alternatives as impracticable, because those alternatives would not advance the purpose of the project,

namely, improving transit connectivity and travel times.[1] After analyzing the six rapid bus and light rail options, the Corps concluded that the Locally Preferred Alternative also was the "least environmentally damaging practicable alternative" under the Clean Water Act, because the Purple Line option had the smallest impact on area wetlands. Notably, this option would impact only about one-half acre of wetlands, less than half the area affected by the next closest option. The Purple Line option also would impact about 5,100 linear feet of permanent streams, the third-lowest impact of the six options.

The Corps acknowledged that the medium-investment light rail option had a higher impact on streams than some other alternatives. However, "based on an overall comprehensive review of proposed impacts to waters of the U.S.," including the much lower impact on wetlands compared to the other alternatives, the Corps concluded that the Purple Line option was the least environmentally damaging practicable alternative.

In reaching its conclusion, the Corps explained that "[i]mpacts to the waters of the U.S. and wetlands [caused by the Purple Line] have been avoided and minimized wherever practicable through design solutions, including shifting the transit way alignment, adjusting construction work areas, and using retaining walls and ballast curbs to minimize the area of disturbance." The Corps further concluded that required mitigation measures ultimately would result in a net benefit to the wetlands.

---

[1] The Corps also considered a "Metrorail Loop" option, which involved an extension of the Washington Metrorail. Maryland rejected this option early in the process due to "a variety of negative effects" of the plan, including financial cost and environmental impact. The Corps similarly rejected the Metrorail Loop option as impracticable "in light of the overall project purpose."

The plaintiffs, Friends of the Capital Crescent Trail and two residents of Montgomery County, Maryland, filed suit against the Corps and two of its officials in the district court in Maryland. Maryland later intervened as a defendant. The plaintiffs sought a declaratory judgment that the Corps acted arbitrarily and capriciously under the Administrative Procedure Act, 5 U.S.C. § 706(2), in issuing the Section 404 permit for the Purple Line project. The district court thoroughly reviewed the Corps' Memorandum for Record and concluded that the Corps' decision was not arbitrary or capricious. The court therefore granted summary judgment to the Corps and Maryland.[2] This appeal followed.

II.

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. *Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*, 991 F.3d 577, 583 (4th Cir. 2021); *Seder v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). Under the Administrative Procedure Act, we must determine whether the Corps' decision to issue a Section 404 permit was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

An agency's decision is arbitrary and capricious if it

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[2] For the same reasons, the district court denied the plaintiffs' motion for summary judgment.

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (citation omitted).  Accordingly, we will sustain an administrative decision if the agency "provides an explanation of its decision that includes a rational connection between the facts found and the choice made."  *Nat'l Audubon Soc'y*, 991 F.3d at 583 (quoting *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014)).  This standard of review is "highly deferential," and we accord especially high deference when, as here, the agency "is called upon to make complex predictions within its area of special expertise."  *Id.* (citation omitted).

## A.

We begin by reviewing the environmental laws applicable to the Purple Line project.  First, NEPA requires federal agencies to conduct a rigorous review of the environmental impacts of "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(C); *see Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 191 (4th Cir. 2009) ("Under NEPA, federal agencies must take a 'hard look' at the potential environmental consequences of their actions." (citation omitted)).  The agency[3] must produce an environmental impact statement detailing, among other things, (1) "the environmental impact of the proposed action," (2) any unavoidable adverse environmental effects of the proposal, and (3) alternatives to the action proposed.  42 U.S.C. § 4332(C); *see also* 40 C.F.R. § 1502.14(a) (requiring the agency to "[e]valuate

---

[3] In the present case, the Federal Transit Administration was the federal agency responsible for overseeing the NEPA process.

reasonable alternatives to the proposed action, and, for alternatives that the agency eliminated from detailed study, briefly discuss the reasons for their elimination"); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 218 (4th Cir. 2019) (discussing NEPA process generally).

In addition to the procedural requirements of NEPA, the Purple Line project is subject to the substantive requirements of the Clean Water Act, which prohibit the discharge of pollutants into "the waters of the United States" unless the discharging entity obtains a permit. 33 U.S.C. §§ 1311(a), 1362(7), (12). Under Section 404 of the Clean Water Act, the Corps may issue permits authorizing the discharge of "dredged or fill material" into such waters. *Id.* § 1344(a), (d).

Under the governing regulations, a Section 404 permit will not issue "if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences" (the least environmentally damaging practicable alternative). 40 C.F.R. § 230.10(a). The regulations define a "practicable alternative" as one that "is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." *Id.* § 230.10(a)(2). When, as here, a non-water dependent project would discharge pollutants into a "special aquatic site,"[4] the regulations establish a presumption that practicable alternatives not

---

[4] Relevant here, wetlands are considered "special aquatic sites." 40 C.F.R. § 230.41.

involving special aquatic sites are available, "unless clearly demonstrated otherwise." *Id.* § 230.10(a)(3).

The regulations clarify that the Corps' analysis under the Clean Water Act should be commensurate with "the seriousness of the potential for adverse impacts on the aquatic ecosystems posed by specific dredged or fill material discharge activities." *Id.* § 230.10. And, "in most cases," the alternatives considered during the applicant's NEPA process will be adequate to form the basis for the Corps' Section 404 review. *Id.* § 230.10(a)(4).

B.

With these principles in mind, we turn to consider the plaintiffs' arguments on appeal.[5] The plaintiffs contend that the Corps acted arbitrarily and capriciously in granting the Section 404 permit without considering alternatives other than the eight options reviewed during the NEPA process. Although the specific nature of the plaintiffs' preferred alternative is not entirely clear, the plaintiffs generally assert that the Corps should have considered other bus service configurations, or "some different mix of guideway and transit mode choices," including options that would not require the widening of bridges or roads.

---

[5] Although the defendants do not challenge the plaintiffs' standing in this appeal, we nevertheless must assure ourselves of our jurisdiction. *Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008). Upon our review of the record, we are satisfied that the plaintiffs have established a cognizable injury that is fairly traceable to the conduct of the defendants, which would be redressable by a favorable decision of this Court. *Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 400 (4th Cir. 2018).

In rejecting the plaintiffs' arguments, the district court first observed that the plaintiffs did not challenge the Corps' conclusion that the Purple Line would cause the least environmental impact of all the rapid bus and light rail options that were considered in the NEPA process and presented to the Corps for consideration. Nor did the plaintiffs dispute that the transportation management and no-build options failed to advance the purposes of the project. After reviewing the relevant regulations, the court concluded that "it was not at all unreasonable for the Corps to incorporate the NEPA alternatives analysis and focus on those alternatives the [transit agencies] had found potentially feasible, rather than trying to 'reinvent the wheel' by proposing or demanding novel alternatives that no party has yet clearly outlined." *Friends of the Cap. Crescent Trail v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 3d 804, 817-18 (D. Md. 2020) (quoting *Hoosier Env't Council v. U.S. Army Corps of Eng'rs*, 722 F.3d 1053, 1061 (7th Cir. 2013)).

We agree with the district court's assessment. As noted above, the relevant regulations specify that "the analysis of alternatives required" for the NEPA process "will in most cases provide the information for the evaluation of alternatives under [the Section 404 permit] Guidelines." 40 C.F.R. § 230.10(a)(4). The regulations further explain that the extent of the analysis required by the Corps will "vary to reflect the seriousness of the potential for adverse impacts on the aquatic ecosystems posed by specific dredged or fill material discharge activities." *Id.* § 230.10. As the district court observed, the "permanent aquatic impacts" of the Purple Line are "quite minor," totaling less than a half-acre of impacted wetlands and less than one linear mile of impacted streams. In addition to these

12

relatively minor aquatic impacts, the Corps concluded that required mitigation measures would provide a net gain in protected wetlands in the area.

Like the district court, we see no reason under these circumstances to require the Corps to "reinvent the wheel" by expanding its review beyond the NEPA alternatives. *See Hoosier Env't Council*, 722 F.3d at 1061 ("If another agency has conducted a responsible analysis the Corps can rely on it in making its own decision."). There is no evidence in this case that the Corps merely "rubber stamped" the NEPA analysis, or that the Corps otherwise abdicated its duty under the Clean Water Act. *Id.* Rather, upon its review of the draft and final environmental impact statements, the Corps concluded that the transit agencies had conducted a "comprehensive" analysis of project alternatives, and had provided the information necessary to assess the "tradeoffs of impacts versus benefits" of the proposals.

We agree with the Corps' assessment that the analysis of alternatives conducted during the NEPA process was comprehensive. The transit agencies selected the eight project options for detailed study based on the agencies' expertise in transportation planning, after considering and receiving public comments on a "wide range of modes and alignments." The transit agencies thereafter engaged in a lengthy and thorough analysis of the eight alternatives, which process was upheld by the D.C. Circuit. *Friends of the Cap. Crescent Trail*, 877 F.3d 1051; *see also Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1447-48 (1st Cir. 1992) (declining to "fault[]" the Corps for relying on the EPA's alternatives analysis under NEPA). In our view, nothing in the record suggests that the present case is the exception to the general rule that the alternatives evaluated in the

13

NEPA process provide a reasonable foundation for the Corps' review. *See* 40 C.F.R. § 230.10(a)(4).

Moreover, we cannot conclude that the Corps acted arbitrarily or capriciously in failing to consider proposals not in the record, namely, unspecified alternative bus options that the plaintiffs appear to favor.[6] The contours of the plaintiffs' preferred options are unclear. In arguing that the Corps failed to consider their preferred alternatives, the plaintiffs point to general objections the Corps received regarding the Purple Line project, including comments advocating for "upgraded bus service," "increasing express bus service," and "adding additional and alternative bus routes." As discussed above, however, the Corps was presented with a range of project alternatives that had been considered by expert agencies and the public over a period of years, including the three rapid bus options and the transportation management option, all of which contemplated "upgraded bus service." The Corps rejected these alternatives both because they would not adequately advance the goals of the project and because the Purple Line would have lesser impacts on wetlands.

Given the minimal aquatic damage caused by the Purple Line, and the Corps' thorough review of the eight options presented, we will not require the Corps to opine on new, hypothetical mass transit configurations not presented to the Corps. *See Hillsdale*

---

[6] Because we hold on the merits that the Corps' decision was not arbitrary or capricious, we do not address the defendants' contention that the plaintiffs waived their claim by failing to present a proposal to the agency. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764 (2004).

*Env't Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1169 (10th Cir. 2012) ("There is no magic number of alternatives the Corps must consider for its analysis to be acceptable, but the agency must draw the line somewhere . . . ."); *see also* 40 C.F.R. § 230.6(b) (explaining that the "level[] of effort" required of the Corps will vary with the "degree[] of [aquatic] impact" of the project). We thus agree with the district court's assessment that the plaintiffs did not propose an "obviously superior alternative that the Corps overlooked" nor did the plaintiffs demonstrate that the Corps' decision-making process was "out of proportion" with the minor aquatic impact caused by the Purple Line.

III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

15