**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-6461**

AARON CARTER,

       Plaintiff – Appellant,

v.

L.J. FLEMING; M. BROYLES, Food Service Manager; S. STALLAL, Food Service Supervisor; MS. GREGG, State Dietician for the VDOC,

       Defendants – Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Elizabeth Kay Dillon, District Judge. (7:16-cv-00123-EKD-RSB)

Argued: November 15, 2017                          Decided: January 8, 2018

Before TRAXLER and FLOYD, Circuit Judges, and J. Michelle CHILDS, United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Traxler wrote the opinion in which Judge Floyd and Judge Childs joined.

**ARGUED:** David Michael Shapiro, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois, for Appellant. Matthew Robert McGuire, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General, Stuart A. Raphael, Solicitor General, Trevor S. Cox, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

TRAXLER, Circuit Judge:

Aaron Carter brought a pro se § 1983 action primarily alleging violations of his rights under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *see* 42 U.S.C. §§ 2000cc, *et seq.*, as the result of his former prison's failure to accommodate his religious dietary needs. The district court granted summary judgment against him, and Carter appeals. Because we conclude that the court erred in granting summary judgment, we reverse and remand to the district court for further proceedings.

I.

Carter is a prisoner in the Virginia Department of Corrections. Because his religion (Nation of Islam) has certain dietary restrictions, Carter participated in a prison program known as Common Fare (the "Program"). Under the Program, the prison provided "an appropriate religious diet that meets or exceeds minimum daily nutritional requirements" in exchange for the prisoner's agreement "to abide by all requirements of th[e] program," including not "eating . . . or possessing unauthorized food items from the main line." J.A. 112. On November 26, 2015, Carter was observed accepting a Thanksgiving Day lunch tray from the main line instead of a Common Fare meal. He was suspended from the Program for one year as a result. Carter filed a grievance within the prison system challenging the suspension on the basis that the Common Fare agreement was already void when he took the meal. He specifically claimed that the prison had violated the Common Fare agreement by changing the menu on October 1,

2

2015, to include items, such as fried foods, that violated the dietary rules of the Nation of Islam. Carter failed to obtain relief, however.

Carter subsequently brought suit in federal district court alleging violations of his religious freedom rights under the First Amendment's Free Exercise Clause and the RLUIPA.[1] He named as defendants the warden and two other officials at the Wallens Ridge State Prison ("WARSP"), where he was incarcerated, as well as the VDOC dietician. He sought declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees.

The district court granted summary judgment against Carter, finding that he had "fail[ed] to disprove the reasonableness of the suspension policy," J.A. 163, and that he had not created a genuine factual dispute as to whether his religious exercise was substantially burdened by the content of the Common Fare menu, considering that all foods on the Common Fare menu were halal and kosher.[2]

---

[1] He also alleged a violation of his substantive due process rights, but that claim is not at issue on appeal.

[2] In support of their motion for summary judgment, Defendants had argued to the district court that Carter failed to exhaust his administrative remedies because Carter's grievance was rejected with instructions to attach a particular form, and Carter failed to follow the instructions and instead unsuccessfully appealed the decision. The district court rejected this exhaustion argument, ruling that prison staff had prevented Carter from availing himself of the appropriate administrative remedies regarding his grievance because they refused to give him a copy of the form he was instructed to file. Defendants do not challenge that ruling. Defendants also do not dispute on appeal that Carter's grievance provided adequate notice of his complaints that he was not receiving a religiously appropriate diet and that he had been wrongly suspended from the Program. *See Wilcox v. Brown*, No. 16-7596, slip op. at 7-8 n.4 (4th Cir. Dec. 5, 2017) ("[T]o satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[]
(Continued)

3

## II.

Carter argues that the district court erred in granting summary judgment against him on his First Amendment and RLUIPA claims. He contends that each of these claims encompasses challenges both to the changes to the Common Fare menu and the suspension and that, with regard to each aspect of the claims, the district court erred in granting summary judgment.

In response, Defendants argue that Carter's claims do not encompass challenges to the suspension. And because Carter was suspended from the Program at the time he filed his complaint, Defendants maintain that he did not have standing to challenge the content of the Common Fare menu. Defendants also argue that even if Carter's claims do encompass challenges to the suspension, such challenges have become moot to the extent he seeks prospective relief. Finally, Defendants contend that the district court correctly ruled that they were entitled to summary judgment on the merits of Carter's claims to the extent that they challenge the Common Fare menu change.

On reply, Carter maintains that because his claims encompass challenges to the suspension, he actually did have standing to challenge the menu change. And he denies that his request for prospective relief from the suspension is now moot.

We will address these arguments seriatim.

---

the prison to the nature of the wrong for which redress is sought.'" (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002))). Indeed, while Carter's grievance was not a model of clarity, we conclude that it did provide prison officials sufficient notice of these complaints.

III.

We begin with justiciability. Article III gives federal courts jurisdiction only over "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so," which "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). Accordingly, a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (some internal quotation marks omitted). "Th[ese] requirement[s] appl[y] independently to each form of relief sought." *McBryde v. Committee to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001) (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 185 (2000)).

A.

Because Defendants' argument that Carter lacked standing to challenge the content of the Common Fare menu was based on the premise that Carter's claims do not encompass challenges to the suspension, we begin by construing Carter's complaint.

5

Importantly, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe his pleadings liberally. *See Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). We conclude that Carter's First Amendment and RLUIPA claims, liberally construed, include challenges to the suspension. The gravamen of Carter's claims is that Defendants are "imposing a substantial burden on [his] religious exercise" by serving religiously inappropriate foods on the Common Fare menu in violation of the Common Fare agreement. J.A. 9. The complaint outlines how the content of the Common Fare menu beginning October 1, 2015, had this effect. But the complaint also provides a full description of the facts relating to the suspension and reiterates Carter's argument that after the Common Fare menu change, the "agreement did not exist, because you cannot expect the original agreement to be in force when the policy of the agreement has been violated." J.A. 8. Carter's complaint requests, among other things, "a declaration that *the acts and omissions described herein* violate[] his rights under the Constitution and laws of the United States." J.A. 10 (emphasis added). It appears that both the Defendants in their memorandum in support of summary judgment and the district court in granting summary judgment interpreted Carter's complaint as challenging the suspension. *See* J.A. 46 (argument in Defendants' memorandum in support of their summary judgment motion asserting, "Carter willingly violated the Common Fare agreement . . . by taking a regular lunch tray instead of a Common Fare tray. Neither the Common Fare menu nor Carter's suspension violates his First Amendment and RLUIPA rights."); J.A. 163 (conclusion in district court opinion that Carter "fails to disprove the reasonableness of the suspension policy"). We give Carter's complaint the same logical

6

reading and construe it as challenging both obstacles he described as standing between him and a religiously appropriate diet. Accordingly, we conclude that his request for "a declaration that *the acts and omissions described herein* violate[] *his rights* under the Constitution and laws of the United States," J.A. 10 (emphasis added), must be understood as challenging the suspension as well as the content of the Common Fare menu, so that if Carter prevailed, he could once again receive meals that complied with his dietary restrictions.

B.

Having identified the claims Carter asserts, we now turn to the justiciability issues Defendants raise.

1.

First, we do not agree with Defendants that Carter lacked standing to seek prospective relief regarding the content of the Common Fare menu because he had already been suspended from the Program when he filed his complaint. There can be no doubt that Carter alleges injury from the change in the Common Fare menu.[3] Defendants nevertheless argue that declaratory or injunctive relief regarding the content of the Common Fare menu could not redress this injury because Carter was suspended from the Program when he filed his complaint. Defendants' argument does not account for the

---

[3] Indeed, Defendants concede that he has standing to seek money damages for injuries he suffered before he was suspended. Defendants argue for various reasons that he is not entitled to damages. We leave those issues for the district court to consider in the first instance.

7

fact that Carter's complaint seeks to overturn the suspension, thus creating the prospect that this hurdle could be overcome. *See Equity in Athletics, Inc. v. Department of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011) ("[N]o explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiff's standing."); *see also Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (holding that the redressability requirement was satisfied when the court's decision would reduce "to some extent" plaintiffs' risk of additional injury); *Utah v. Evans*, 536 U.S. 452, 464 (2002) (noting that "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered" suffices to show standing). Nor does Defendants' argument account for the fact that the suspension was for only one year and set to expire in December 2016. *See Shalom Pentecostal Church v. Acting Sec. U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 162 (3d Cir. 2015) (rejecting contention by government "that relief must be immediate to satisfy constitutional standing"). In light of both of these considerations, we conclude that Carter's prospects for meaningful redress were sufficient to give him standing to seek prospective relief regarding the content of the Common Fare menu.

2.

Defendants do not dispute that Carter possessed standing to seek prospective relief from the s*uspension*, but they contend that any demand for such relief has become moot. Specifically, Defendants point to two circumstances that have changed since Carter filed his complaint that they argue prevent any prospective relief. First, Defendants maintain that the one-year suspension is no longer harming Carter because it expired in December 2016. Second, Defendants contend that declaratory or injunctive relief awarded against

8

the WARSP officials he has sued could not achieve reinstatement for Carter in the Program because he has been transferred to a different Virginia prison.

We do not agree that either change moots Carter's attempts to obtain prospective relief from the suspension. While the suspension had the effect of removing Carter from the Program, its expiration does not entitle him to return to the Program. Rather, it simply allows him to reapply, with no guarantee that his application will be granted.[4] Accordingly, Defendants have not shown that the suspension is no longer harming Carter. *See Colvin v. Caruso*, 605 F.3d 282, 295-96 (6th Cir. 2010) (holding that transfer to new prison did not moot prisoner's claims that he was wrongly removed from kosher-meal program when new prison relied on first prison's removal of the prisoner's kosher-meal status to justify continuing his non-kosher-meal status). Should Carter prevail on his challenge to the suspension, the district court could order the WARSP officials to rescind the suspension they imposed or it could declare the suspension void. And, under the applicable VDOC policies, such relief could entitle Carter to resume participating in the Program at his new prison "as soon as practical."[5] J.A. 96 (VDOC Operating Procedure 841.3 stating that "[a]n offender who is approved for Common Fare and transfers into a

---

[4] In fact, at oral argument, the parties agreed that Carter had applied for reinstatement at his new prison and been denied.

[5] The applicable VDOC policy calls for a one-year suspension for a second violation of the Agreement and a four-year suspension for a subsequent violation. Thus, were the suspension voided or rescinded, another consequence would be that instead of being a two-time offender subject to a four-year suspension for a subsequent violation of the Common Fare agreement, he would only be a one-time offender going forward and thus subject only to a one-year suspension for a subsequent violation of the agreement.

9

facility that offers the Common Fare diet should begin receiving Common Fare meals as soon as practical").  In that way, Carter's challenge to the suspension could provide meaningful redress to him.  Thus, Defendants have not demonstrated that Carter has lost all legally cognizable interest in the outcome of his request for prospective relief from the suspension.

IV.

Having addressed Defendants' justiciability arguments, we now turn to Carter's contention that the district court erred in granting summary judgment against him on the merits of his First Amendment and RLUIPA claims.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party."  *T–Mobile Ne. LLC v. City Council of Newport News*, 674 F.3d 380, 384–85 (4th Cir. 2012) (internal quotation marks omitted).

In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that:  (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion.  *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981).  A practice or policy places a substantial burden on a person's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.*  When deciding whether the prison's practice substantially burdens a religious exercise, "courts must not judge the significance of the

10

particular belief or practice in question." *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006).

Even when a prison policy or practice substantially burdens a prisoner's religious exercise, it will not violate the First Amendment if the government can demonstrate that it "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This rule applies as well to punitive measures, which must be "reasonably adapted to achieving a legitimate penological objective." *Lovelace*, 472 F.3d at 200 (internal quotation marks omitted). To the extent that defendants contend that a particular objective justified punitive policy or practice, they must present it to the district court in the first instance. *See id.* at 200-01 n.9. It is not our role to evaluate possible objectives that defendants have not presented to the district court. *See id.* And Defendants did not identify any such objective in this case.

RLUIPA, in relevant part, provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015). As is the case concerning the First Amendment, the courts will not evaluate an interest that the government has not asserted as the justification for the burden. *See Lovelace*, 472 F.3d at 190.

With regard to both the First Amendment and the RLUIPA claims, Carter argues that he at least created a genuine factual dispute as to whether Defendants' actions in preventing him from receiving meals in compliance with his dietary restrictions

11

substantially burdened his ability to practice his religion.  We agree.  Carter's verified complaint plainly alleges that the new Common Fare menu does not comply with Nation of Islam dietary restrictions because, among other problems, it includes fried foods.[6] And Carter highlighted this fact in his pro se memorandum opposing summary judgment.

Defendants never offered any specific challenge in the district court to Carter's contention that the inclusion of fried foods in the Common Fare menu prevented him from complying with his religion's dietary requirements.  However, on appeal Defendants argue for the first time that they are entitled to summary judgment because Carter failed to create a genuine factual dispute regarding whether his religious beliefs prohibit the eating of fried foods.  And, they posit that even if his religious beliefs prohibit him from eating some of the food he is served, the remaining food might be sufficiently nutritious that his religious exercise is not actually substantially burdened.[7] Of course, with Defendants not having raised either of these arguments in the district court in support of their entitlement to summary judgment, Carter had no notice that he needed to develop evidence on the nutritional value of the food he actually could eat or additional evidence demonstrating that his religion prohibits him from eating fried foods. Accordingly, Defendants are not entitled to summary judgment on these belatedly raised

---

[6]    For the sake of simplicity, we will focus only on this particular way in which Carter claimed the new menu did not comply with Nation of Islam's dietary restrictions.

[7]    Defendants advanced this second argument for the first time at oral argument.

grounds. *See Fountain v. Filson*, 336 U.S. 681, 683 (1949) (per curiam); *cf. United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989) (holding that district courts may grant summary judgment sua sponte but only if the notice to the losing party is "sufficient to provide . . . an adequate opportunity to demonstrate a genuine issue of material fact").[8]

With Carter at least having shown a genuine factual dispute as to whether his rights were substantially burdened by the prison's serving him foods that Nation of Islam dietary rules prohibited him from eating, Defendants could show entitlement to summary judgment on the Free Exercise claim only by demonstrating as a matter of law that the policy or practice causing the burden was reasonably related to the achievement of a legitimate penological objective. *See Turner*, 482 U.S. at 89. And they could establish entitlement to summary judgment on the RLUIPA claim only by showing as a matter of law that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. *See Holt*, 135 S. Ct. at 860. To make these showings, Defendants first needed to identify the institutional need for substantially burdening the

---

[8] Moreover, we note that the summary judgment record at least creates a genuine factual dispute regarding the issue of whether Nation of Islam doctrine precludes the eating of fried foods. Carter alleged in his verified complaint that the Common Fare menu was in violation of the Nation of Islam diet because, among other reasons, it featured fried foods. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." (emphasis in original)) He repeated this assertion in his affidavit. And finally, he provided an excerpt from the book "How to Eat to Live" by Elijah Muhammad instructing adherents to "[s]tay away from eating fried foods." J.A. 152. Defendants have forecast no evidence to the contrary.

13

prisoner's rights. *See Lovelace*, 472 F.3d at 190, 200 n.9. Since Defendants have not

offered any interest that they claim justified the burden, Defendants have not shown

entitlement to summary judgment.[9]

V.

In sum, for the foregoing reasons, we reverse the grant of summary judgment and

remand to the district court for further proceedings.

*REVERSED AND REMANDED*

---

[9] In support of their summary judgment motion in the district court, Defendants did not raise any issues relating to the responsibility of specific Defendants for any violations. However, in a footnote in its opinion, the district court called into question the sufficiency of the allegations to establish liability regarding all but one of the specific Defendants Carter sued. On appeal, Carter argues that his allegations regarding the specific Defendants were sufficient, and Defendants have offered no response to those arguments. On remand, the parties will be free to litigate any arguments relating to the individual responsibility of particular Defendants.