**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2025**

───────────

AMANDA WATTS,

Plaintiff - Appellant,

v.

MARYLAND CVS PHARMACY, LLC,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:21-cv-00589-JRR)

───────────

Argued:  March 20, 2025                     Decided:  July 1, 2025

───────────

Before DIAZ, Chief Judge, and HARRIS and BERNER, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Berner joined.

───────────

**ARGUED:**  Lindsey Nicole McCulley, SALSBURY STRINGER MCCULLEY, LLC, Baltimore, Maryland, for Appellant.  Katherine Herr Solomon, MAURO LILLING NAPARTY, Woodbury, New York, for Appellee.  **ON BRIEF:**  Kevin P. Sullivan, SALSBURY SULLIVAN, LLC, Baltimore, Maryland, for Appellant.  Scott Patrick Burns, TYDINGS & ROSENBERG, LLP, Baltimore, Maryland; Matthew W. Naparty, MAURO LILLING NAPARTY, Woodbury, New York, for Appellee.

───────────

PAMELA HARRIS, Circuit Judge:

At a CVS Pharmacy in 2017, Amanda Watts was given two shots, one with the Pneumovax 23 vaccine and one with the Boostrix vaccine. According to Watts, both vaccines were negligently administered, in the same improper location in her arm. Watts was eventually diagnosed with a chronic pain condition that can result from nerve injury, which she attributes to CVS's negligence.

But CVS is immune from suit for its administration of Boostrix under the federal National Childhood Vaccine Injury Act of 1986. Accordingly, Watts's complaint against CVS alleged only that it was negligent in its administration of Pneumovax. The district court granted summary judgment to CVS because Watts presented no evidence from which a jury could find that it was CVS's administration of the Pneumovax vaccine, rather than the Boostrix vaccine, that caused her injury. We agree with the district court and affirm its judgment.

**I.**

This case involves the back-to-back administration of two vaccines, Pneumovax 23 and Boostrix, in the same spot on Amanda Watts's arm. CVS is immunized under federal law for its administration of one vaccine – Boostrix – but not the other. Because that immunity plays a central role in this litigation, we begin with an overview of the relevant federal law. We turn then to the facts and proceedings in this case.

2

## A.

The National Childhood Vaccine Injury Act of 1986 established a National Vaccine Injury Compensation Program ("VIC Program") as an alternative to traditional civil litigation for resolving certain vaccine-related claims. *See* 42 U.S.C. § 300aa-10 *et seq.* Boostrix, which protects against tetanus, diphtheria, and pertussis, is a covered vaccine under the Act. *Id.* § 300aa-14(a); 42 C.F.R. § 100.3(a). Pneumovax 23, which protects against pneumococcal disease, is not. *See* 42 C.F.R. § 100.3(a).

Under the Vaccine Act, a person seeking damages of more than $1,000 for an alleged injury resulting from the administration of a covered vaccine must exhaust their remedies under the VIC Program before suing a vaccine administrator, like CVS, in state or federal court. 42 U.S.C. § 300aa-11(a)(2)(A). To proceed under the VIC Program, a claimant files a petition with the United States Court of Federal Claims. *Id.* § 300aa-11(a)(1). As relevant here, petitions alleging injury but not death must be filed within three years after the first symptom of the alleged injury. *Id.* § 300aa-16(a)(2).

The plaintiff in this case, Amanda Watts, did not exhaust her remedies under the VIC Program for any injury stemming from the Boostrix shot she received at CVS in 2017. That has important consequences for this case. Even if CVS was negligent in its administration of Watts's Boostrix shot, Watts may not recover damages for that negligence. Instead, CVS is effectively immune from suit for its administration of Boostrix, and Watts may hold CVS liable only for injury caused by CVS's allegedly improper administration of Pneumovax.

3

**B.**

In December 2017, a pharmacist at a CVS in Maryland gave Watts two vaccine shots, one with Boostrix and one with Pneumovax.  According to Watts, both shots went into her left arm in nearly the exact same spot, leaving only one visible puncture mark.  That location, Watts alleges, was incorrect:  The vaccines should have been injected into her deltoid muscle, but were instead injected several centimeters below that.  Watts would later testify that after the first injection, she told the pharmacist that she felt pain and that "something was wrong."  J.A. 415.  She also felt pain after the second injection.  Watts does not know, and the record does not indicate, the order in which the two vaccines were administered.

Watts alleges that after she left the CVS, the area around the injection site turned red, and her arm began to swell.  Over the next two days, she later testified, the pain increased to the point that she was unable to move her arm.  Watts sought emergency medical care twice in the week after the injections.  The nurse practitioner who treated her later testified that she observed the presence of only one puncture hole and that the area around it was inflamed.

Watts alleges that eventually the redness and pain from her arm spread to other parts of her body, including her shoulders, back, and legs, becoming at some points so painful that Watts was unable to move at all.  She was seen and treated by multiple doctors over the next few years.  One of those doctors, Dr. Akhil Chhatre, diagnosed Watts with Complex Regional Pain Syndrome ("CRPS"), a chronic health condition that can occur after a nerve injury and cause long-lasting pain.

4

## C.

In December 2020, Watts filed a complaint against CVS asserting a single count of negligence.[1]   Watts alleged that as "a direct and proximate cause" of the negligent administration of Pneumovax, she suffered "painful and permanent injuries," including CRPS.  J.A. 11.  Although Watts's complaint noted that she had received two vaccines at the same time, it did not mention Boostrix by name, and it sought to hold CVS liable only for the improper administration of Pneumovax.

During discovery, the parties introduced experts to opine on both the standard of care for vaccine administration and the cause of Watts's injuries.  Causation was especially critical, given CVS's partial immunity under federal law.  Watts allegedly received two vaccine shots at the same time and in the same location on her arm.  And under the Vaccine Act, the effects of those two shots needed to be separated out:  CVS could be held liable for injuries caused by an improperly administered Pneumovax shot, but not for injuries caused by the Boostrix shot.

Watts designated Karen Ryle, a practicing pharmacist, as her standard of care expert.  As to standard of care, Ryle opined in her report that CVS failed to observe governing standards by improperly injecting Pneumovax below the deltoid muscle.  But Ryle also went on to address causation, opining that this faulty injection of Pneumovax caused Watts's injuries.  Ryle's report did not address Boostrix or attempt to differentiate

---

[1] Watts filed her complaint in Maryland state court.  CVS removed the case to the United States District Court for the District of Maryland.

5

the effect of that shot because, at the time her report was prepared, Ryle was unaware that Watts had received a Boostrix shot along with her Pneumovax shot.

By the time Ms. Ryle was deposed, however, she knew about the Boostrix injection. And when asked why she believed it was the Pneumovax shot and not the Boostrix shot that led to Watts's CRPS, she had no answer. Instead, Ryle said that she would amend her previously submitted report, to reflect "that it would be either the Boostrix or the Pneumovax" that caused Watts's injury, and that she did not "know for certain which one it was." J.A. 98. She did suggest that based on Watts's testimony, it would have been "the first shot," J.A. 108, but as noted above, there is no record evidence as to which that was.

Watts designated Dr. Akhil Chhatre, who had diagnosed her with CRPS, as her causation expert. In his report, Chhatre opined that the Pneumovax injection caused Watts's injuries, explaining that he had "considered other potential causes" but that "nothing else remarkable occurred around the time of the onset of her symptoms that could reasonably explain her injuries." J.A. 534. Like Ryle's report, Chhatre's did not discuss the Boostrix vaccine, and the language just quoted suggests, consistent with other record evidence, that he too was unaware of the Boostrix shot when he wrote his report.

But during his deposition, Dr. Chhatre was told of the Boostrix vaccination and then asked why he believed it was the Pneumovax shot rather than the Boostrix shot that caused Watts's CRPS. Much like Ryle, Chhatre amended his earlier opinion, responding that if the location of the two shots "was the exact same," it would be "difficult for [him] to tell" which vaccine was the cause. J.A. 606. Chhatre was clear that Watts's injuries would have been caused by one or the other of the two shots, "[w]hichever one was . . . the focus of

6

residual pain and redness." J.A. 607. But determining which of the two was responsible would require "a couple degrees of hypotheticals," given that both were administered in the same spot on Watts's arm. J.A. 608. "[W]e'd have to somehow be able to identify the difference in location and which of those locations had the residual pain and swelling." *Id.*

A month after his deposition, Dr. Chhatre filed a Notice of Errata under Federal Rule of Civil Procedure 30(e), seeking to add a sentence to his deposition testimony. The new sentence appeared to suggest that *both* vaccines – not one or the other – were responsible, contributing together to Watts's injury: "[I]f both shots were given in the same or similar, improper location, the Pneumovax would have contributed to [Watts's] injuries." J.A. 644.

### D.

CVS filed a motion to strike Dr. Chhatre's errata sheet, arguing that it went beyond the kind of correction contemplated by Rule 30(e) and instead materially altered Chhatre's theory of causation. It also moved for summary judgment, on the ground that neither of Watts's experts could identify which of CVS's two shots caused her injuries. With no record evidence as to whether the Boostrix shot or the Pneumovax shot was administered first, or identifying which vaccine was associated with Watts's "residual pain and swelling," there was nothing from which a jury could find that Watts's condition was caused by the Pneumovax injection and not the Boostrix injection.

The district court granted CVS's motion to strike and its motion for summary judgment. *Watts v. Md. CVS Pharmacy, LLC*, No. 1:21-cv-00589-JRR, 2023 WL 5750415 (D. Md. Sept. 6, 2023). It began with Dr. Chhatre's errata sheet. Although the Fourth

7

Circuit has not ruled on the question, the court explained, district courts in Maryland read Rule 30(e) to allow for substantive changes to deposition testimony that "correct misstatements or clarify existing answers," but not for errata that "materially change the answers or fully supplant them." *Id.* at *6 (citation omitted).[2]

Here, the court concluded, Chhatre's proposed errata fell on the wrong side of that line. Chhatre had testified at his deposition that one or the other, but not both, of Watts's shots caused her injury, the court reasoned, but then suggested for the first time in his errata that *both* vaccines were a cause of Watts's harm. That opinion, the court held, could not be reconciled with Chhatre's earlier testimony: "[T]o the contrary, when given an opportunity to opine that both vaccines contributed to [Watts's] harm, Dr. Chhatre's [deposition] testimony expressly allows that only 'one' was the cause." *Id.* at *7 (quoting deposition testimony). Because Chhatre's errata would make a "wholesale, substantive change that materially affects the legal impact of the record on causation," the court struck the proposed errata. *Id.*

The court then addressed CVS's motion for summary judgment. Agreeing with CVS, the court held that Watts's claim failed as a matter of law because she had produced no evidence from which a jury could find that her injury was caused by the Pneumovax shot – and not by the Boostrix shot, for which CVS was immune. *Id.* at *10–11. Instead, with the evidence in equipoise, "the jury would be asked to guess." *Id.* at *10. Because

---

[2] Under Rule 30(e), a deponent is permitted to review his deposition transcript or recording and, "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." *See* Fed. R. Civ. P. 30(e)(1).

8

Watts could not satisfy the causation element of her negligence claim, the district court granted summary judgment to CVS.

Watts timely appealed.

## II.

We review a district court's grant of summary judgment de novo. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying that standard, we view the record evidence in the light most favorable to Watts, the non-moving party. *Carter*, 879 F.3d at 139.

The parties focus their arguments on Maryland tort-law doctrines that may apply when more than one negligent act or actor combine to cause an injury. Under that state law, a plaintiff, under the right circumstances, may recover for the entirety of her injury from a defendant who was partly but not fully responsible for that injury, *see, e.g.*, *Mayer v. N. Arundel Hosp. Ass'n*, 802 A.2d 483, 489–91 (Md. Ct. Spec. App. 2002) (applying "substantial factor causation" doctrine), or even when it is not clear which of two defendants caused the injury at all, *see, e.g.*, *Thodos v. Bland*, 542 A.2d 1307, 1315 (Md. Ct. Spec. App. 1988) (discussing "alternative liability" doctrine). But this case is governed in a critical respect by *federal* law. Under the federal Vaccine Act, CVS cannot be held liable for any negligence it may have committed in administering Watts's Boostrix shot. So regardless of how Maryland law might otherwise have approached a similar case, here, as a result of CVS's federal-law immunity for Boostrix, Watts cannot recover unless there

9

is evidence from which a jury could find that her injuries were caused by her Pneumovax shot and not by the Boostrix shot given at the same time and in the same spot on her arm.

We agree with the district court that a jury could do no more than "guess" as to that crucial element of Watts's case. *Watts*, 2023 WL 5750415, at \*10. As the district court explained, the original deposition testimony of Watts's own causation expert, Dr. Chhatre, was that one of Watts's two shots caused her injury – but that he could not determine which one. *Id.* The best he could do was opine that *if* the shots were not given in precisely the same spot, and *if* it were possible to identify which injection site was the "focus of residual pain and redness," *then* he could identify the corresponding injection as the cause of Watts's CRPS condition. J.A. 607–08. But there is no evidence tying one or the other of Watts's shots to the inflammation at the injection site, as the district court noted, *see Watts*, 2023 WL 5750415, at \*10, and thus no way for Chhatre to determine causation.

Watts's other expert witness, Ms. Ryle, was a pharmacist retained by Watts to opine only on the standard of care, and clarified at her deposition that she was not an expert on causation. But she did answer questions about causation, and for the sake of completeness, we note that nothing in her testimony could have supported a jury finding that Watts's injuries were caused by her Pneumovax injection. Like Dr. Chhatre, Ryle opined that Watts's injury was caused either by the Pneumovax shot or the Boostrix shot, and that she could not say which one. J.A. 98. She did suspect, based on Watts's own testimony, that it would have been the shot administered first, J.A. 108 – but again, there is no evidence as to the order in which the shots were given, and thus no way to determine causation based on this testimony.

10

We reach the same conclusion even if we add to the evidentiary record Dr. Chhatre's post-deposition opinion that the two injections *together* caused Watts's CRPS, with each contributing to her injury. *See* J.A. 644 ("[I]f both shots were given in the same or similar, improper location, the Pneumovax would have contributed to her injuries."). The parties vigorously dispute whether the district court properly excluded Chhatre's errata because it would work a material change to his original deposition answers. We are inclined to think the district court got that right.[3] But even if we assume otherwise, what the record would support is only a finding that CVS's Boostrix injection, for which it is immune, did indeed cause Watts's injury, albeit in combination with the Pneumovax injection. As the district court put it, Watts would still be relying for liability "upon the Boostrix vaccine as a second, separate negligent act," *Watts*, 2023 WL 5750415, at *9 – something she cannot do consistent with the federal Vaccine Act. And Watts's own theory is that her injury was "indivisible" and not capable of apportionment, entitling her to recover for the full extent of her harm, *see Mayer*, 802 A.2d at 491–92 – which means she has presented no evidence from which a jury could estimate the share of her harm attributable to the Pneumovax shot.

---

[3] As the district court noted, this court has yet to opine on the permissible scope of alterations to deposition testimony under Rule 30(e). *Watts*, 2023 WL 5750415, at *6. And we do not do so today. Neither party here disputes the standard applied by the district court – permitting changes that "correct misstatements or clarify existing answers" and rejecting those that "materially change [deposition] answers or fully supplant them," *id.* (citation omitted) – so we take it as a given for purposes of this case. And under that standard, it does appear that Dr. Chhatre's new sentence was properly stricken because it constituted a material change rather than a clarification or correction.

11

We appreciate that Congress's VIC Program and the Vaccine Act's mandatory exhaustion requirement have left Watts in a difficult position when it comes to making a negligence claim in court. *See Watts*, 2023 WL 5750415, at *10 (noting Watts's concern about the implications of CVS's immunity for her case). But we agree with the district court that because Watts has not provided evidence from which a jury could conclude which of her two vaccine shots – one actionable, one not – caused her injuries, she cannot proceed with her case.

## III.

For the reasons given above, we affirm the judgment of the district court.

*AFFIRMED*