**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1909**

---

JIMMY EDWARDS; ROBERT HUNT; DOLORES HUNT; CLIFFORD MCKELLAR, JR.; EMMA MCKELLAR; WEST LUMBERTON BAPTIST CHURCH; CURRIE CHAIN SAW, INC.; C.J.M. VENTURES, INC.; WILLIAM LOCKLEAR, d/b/a Stricklands's Barbershop; TBL ENVIRONMENTAL LABORATORY, INC.; SAMMY'S AUTO SALES, INC.; ERIC CHAVIS, on behalf of themselves and all others similarly situated,

        Plaintiffs – Appellants,

   and

ANTOINETTE MOORE; LINDA SAMPSON,

        Plaintiffs,

   v.

CSX TRANSPORTATION, INC.,

        Defendant – Appellee,

   and

CSX CORPORATION; CSX INTERMODAL TERMINALS, INC.,

        Defendants.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:18-cv-00169-BO; 7:18-cv-00178-BO)

---

Argued: December 13, 2024                           Decided: August 12, 2025

Before WYNN, HARRIS, and QUATTLEBAUM, Circuit Judges.

———————————

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Wynn and Judge Quattlebaum joined.

———————————

**ARGUED:**  William Franklin Cash, III, LEVIN PAPANTONIO RAFFERTY, Pensacola, Florida, for Appellants.  Scott L. Winkelman, CROWELL & MORING LLP, Washington, D.C., for Appellee.  **ON BRIEF:**  Theodore J. Leopold, Diana L. Martin, COHEN MILSTEIN SELLERS & TOLL PLLC, Palm Beach Gardens, Florida; Mark R. Sigmon, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Raleigh, North Carolina, for Appellants.  Henry L. Kitchin, Jr., MCGUIREWOODS LLP, Wilmington, North Carolina; April N. Ross, CROWELL & MORING LLP, Washington, D.C., for Appellee.

———————————

2

PAMELA HARRIS, Circuit Judge:

This is the second appeal in a suit brought by residents and businesses of Lumberton, North Carolina, alleging that CSX Transportation caused their property to be flooded during Hurricanes Matthew and Florence. In the first appeal, we affirmed the dismissal of most of the plaintiffs' claims but concluded that one breach-of-contract claim should proceed. On remand, the district court granted summary judgment to CSX on the contract claim for three independent reasons. Because we agree that the plaintiffs cannot show that CSX breached the relevant contract, we affirm the judgment of the district court on that ground alone.

## I.

This suit arises from the severe flooding that occurred in Lumberton, North Carolina, as a result of Hurricanes Matthew and Florence in 2016 and 2018. This is the second time the plaintiffs have appealed an adverse decision from the district court. The facts underlying their suit are recounted in detail in our prior opinion, *see Edwards v. CSX Transp., Inc.*, 983 F.3d 112, 116–17 (4th Cir. 2020) ("*Edwards I*"), so we outline them only briefly here. We then describe our first decision and the proceedings in the district court on remand.

## A.

The Lumber River flows through Lumberton from northwest to southeast. Neighborhoods in the south and west of the City are low-lying areas prone to flooding. To protect those neighborhoods, a group of local, state, and federal authorities came together

3

in the 1960s and 70s to design and construct a levee system. As designed, however, the levee system has a fundamental flaw: Since the 1850s, CSX Transportation and its predecessors have operated a rail line that parallels the Lumber River and creates an unobstructed "gap" in the levee through which trains – and waters – may run. *See id.* at 116.

To address this problem, the City of Lumberton entered into a licensing agreement, known as the Tri-Party Agreement ("TPA"), with CSX's predecessor and the Robeson County Drainage District No. 1. As relevant here, the TPA grants the City and the Drainage District the "right or license to construct and maintain portions of a[n] . . . earthen dike" on CSX's property through the gap. J.A. 76.[1] The TPA also granted the City the "right and privilege of closing said dike across said track and the roadbed thereof ONLY in the event the City [] is in eminent [sic] danger of flood," so long as it gives "at least 12 hours['] notice prior to such closing." J.A. 77. It is undisputed that the City never built the earthen dike on CSX's right-of-way.

When Hurricane Matthew threatened Lumberton in 2016, the City informed CSX of its desire to construct an "emergency sandbag dam" to close the gap in the levee. *Edwards I*, 983 F.3d at 116. CSX refused to grant the City access to its right-of-way. "Predictably, the Lumber River coursed through the gap" and caused "catastrophic" damage to the City and its inhabitants. *Id.*

---

[1] We have appended to the end of this opinion a schematic for the earthen dike that was incorporated into the TPA.

4

Two years later, Hurricane Florence threatened to cause major flooding in the area. The City again sought to close the gap in its levee system. CSX initially refused the request again, but eventually relented after the Governor issued an emergency order. By that time, though, "there was only time to hastily construct a makeshift berm, which ultimately failed," resulting in a second round of flooding. *Id.* at 117.

**B.**

The plaintiffs in this case represent a putative class of residents and businesses from South and West Lumberton. They initially asserted four causes of action – one in contract, three in tort – alleging that CSX "breached its obligations under the [TPA], unduly prevented the City from closing the gap, and failed to take other necessary steps to prevent flooding." *Id.* The district court dismissed the tort claims under Rule 12(b)(6) as preempted by the federal Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 1101, *et seq.*, and we affirmed. *See id.* at 124.

The district court also dismissed the contract claim, concluding that the plaintiffs were not intended third-party beneficiaries to the TPA under North Carolina law and, therefore, could not maintain an action in contract. *See id.* at 118. Here, we disagreed. Although it was "perhaps a close call," we explained that the plaintiffs' allegations plausibly supported their claim to third-party-beneficiary status "at this early stage of the litigation." *Id.* We therefore reversed the district court's dismissal of the contract claim and remanded for further proceedings.

After discovery, CSX moved for summary judgment. The district court granted CSX's motion on three alternative grounds. *See Edwards v. CSX Transp., Inc.*, 684 F.

5

Supp. 3d 443, 448–51 (E.D.N.C. 2023) ("*Edwards II*"). First, the court held that the plaintiffs' contract claim, like their tort claims, was preempted by the ICCTA. *Id.* at 448–50. Second, now with the benefit of discovery, the court again held that the plaintiffs were not intended third-party beneficiaries to the TPA. *Id.* at 450–51. And third, the court concluded that the plaintiffs' contract claim failed on the merits. *Id.*

For present purposes, our focus is on the district court's third ruling and the merits of the plaintiffs' contract claim. The TPA, recall, authorized the construction of an "earthen dike" on CSX's property and allowed the City to close "said dike" if and only if there was an imminent risk of flooding. J.A. 76–77. Although "said dike" was never constructed, the plaintiffs argued that the TPA also entitled the City to close the gap across CSX's rail line through substitute means, like sandbags, and that CSX breached the parties' contract when it refused to allow the City to "construct an emergency sandbag dam" as Hurricane Matthew approached. *Edwards I*, 983 F.3d at 116.

The district court rejected that argument, concluding that construction of the contemplated dike was a condition precedent to CSX's obligations under the TPA, "the performance of which is mandatory before [CSX] become[s] bound by the contract." *Edwards II*, 684 F. Supp. 3d at 451 (quoting *Cox v. Funk*, 255 S.E.2d 600, 601 (N.C. Ct. App. 1979)). "In the absence of an earthen dike," the court held, the plaintiffs "cannot show that CSX has breached the TPA." *Id.*

The plaintiffs timely appealed.

## II.

We review the district court's ruling on summary judgment de novo, applying the same legal standards as the district court and viewing the evidence in the light most favorable to the nonmoving party. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In cases involving breach-of-contract claims, we also review de novo "the district court's contract interpretation underlying its summary judgment ruling." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 392 (4th Cir. 2023) (citation omitted). The parties agree that the plaintiffs' contract claim is governed by North Carolina law.

The district court granted summary judgment to CSX on the plaintiffs' contract claim on three independent and alternative grounds. Because we agree that the plaintiffs cannot show that CSX breached the TPA, we affirm the judgment of the district court on that basis and do not reach its alternative holdings.

\*      \*      \*

The TPA grants the City of Lumberton and the Drainage District the "right or license to construct and maintain portions of a 6-foot, more or less, high (10-foot wide top with 3:1 side slopes) earthen dike on the easterly and westerly portions of [CSX's] right of way" through the gap in the City's levee system. J.A. 76. The TPA provides detailed specifications for the dike's design, including multiple schematics. *See* J.A 76, 80–81. It also establishes several covenants relating to "said dike." *See* J.A. 76–77. For example,

7

the TPA obliges the Drainage District to place and maintain sandbags on the "slopes of said dike" to prevent erosion, as well as markers alongside "said dike" to "plainly indicate [its] location and ownership." *Id.* This carefully described and negotiated dike, as the district court put it, is the "lynchpin" of the parties' agreement. *See Edwards II*, 684 F. Supp. 3d at 451.

Most relevant here, Paragraph 8 of the TPA sets out the limited circumstances under which the City may actually *close* the dike it has constructed across CSX's line and bring rail transit to a temporary halt. The City has the right to close "said dike" "ONLY in the event the City [] is in eminent [sic] danger of flood," and only so long as the City has given "at least 12 hours['] notice prior to such closing." J.A. 77. It is clear – and the plaintiffs do not dispute – that Paragraph 8's reference to "said dike" can mean only the "earthen dike" the City has been authorized by the TPA to construct. By way of the TPA, in other words, CSX has agreed to the construction of an "earthen dike" across its property, and the City has agreed to keep "said dike" open unless there is a flooding emergency.

The plaintiffs argue that CSX breached its end of the agreement by refusing to allow for an emergency sandbag dam across its tracks when Hurricane Matthew approached. But CSX did not agree to a sandbag barrier, and the TPA does not license the City to fill the gap on CSX property in any manner it chooses. Instead, the TPA gives the City the (limited) right to close "*said dike*" – and "said dike," as the plaintiffs admit, has never been built. The district court viewed construction of the dike as a "condition precedent," without which CSX was not bound by the TPA. *Edwards II*, 684 F. Supp. 3d at 451. But we need not adopt that reasoning here. Even assuming the TPA remained enforceable, the only duty

8

Paragraph 8 imposed on CSX was to allow the City to close "said dike." And we do not see how CSX can be held to have breached a duty to close "said dike" when "said dike" did not exist.

In short, a "plain reading" of the terms of the TPA forecloses the plaintiffs' breach of contract claim. *See id.* And as the district court held, *id.*, we are bound to "enforce the contract as written," without imposing "liabilities on the parties not bargained for and found therein," *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978); *see also Sanders v. Wilkerson*, 204 S.E.2d 17, 19 (N.C. 1974) (license under North Carolina law "merely serves to authorize one to do certain *specified* acts upon the lands of the licensor" (emphasis added) (citation omitted)). For that reason, we affirm the grant of summary judgment to CSX on the plaintiffs' contract claim.

## III.

For the reasons given above, we affirm the judgment of the district court.

*AFFIRMED*

9

**APPENDIX**



J.A. 80.  A schematic for the earthen dike that was included in the Tri-Party Agreement.